### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and on Behalf of All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **THE SCOTTS COMPANY, LLC, and EG SYSTEMS, INC.,** **Defendants.** | § § § § § § | |

### CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

The Parties to this Action, acting through their representatives and attorneys, have reached an agreement concerning the essential terms of a settlement of all claims in this Action, subject to preparation and execution of a comprehensive written settlement and release agreement, and further subject to approval by the Court.  The Parties now enter into this Class and Collective Action Settlement Agreement ("Agreement").

**WHEREAS**, on June 5, 2017, Geramie Hamsher (the "Named Plaintiff") commenced the above-captioned lawsuit, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA") by failing to properly pay overtime premium compensation to the Named Plaintiff and a purported class of similarly situated employees and failed to issue appropriate wage notices and wage statements to the same.

**WHEREAS**,  Class Counsel and Counsel for Defendants have conducted discovery and investigated the facts relating to the claims alleged and have made a thorough study of the legal principles applicable to the claims and defenses in this Action; and

**WHEREAS**, based upon Class Counsel's investigation, legal evaluation, and taking into account the sharply contested legal and factual issues involved, as well as Class Counsel's assessment of the uncertainties of complex litigation and the relative benefits conferred upon the Class Members pursuant to this Agreement, Class Counsel have concluded that a settlement with Defendants on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Named Plaintiff and the Class Members; and

**WHEREAS**, uncertainty exists as to Defendants' potential liability, if any, and the nature and amount, if any, of damages owed to the Named Plaintiff and the purported class; and

**WHEREAS**, the Named Plaintiff and his lawyers have determined, based upon all the facts and circumstances underlying this litigation, that the Settlement described herein is fair, reasonable, and equitable; and

**WHEREAS**, Defendants have asserted defenses to the claims alleged in this case and expressly denied each of the claims asserted against them and any and all liability arising out of the conduct alleged against Defendants.  The Parties specifically agree that the agreement of Defendants to settle this matter is not and cannot be construed as an admission of any wrongdoing whatsoever by Defendants; and

**WHEREAS**, Defendants, while continuing to deny any liability or wrongdoing, desire to resolve this lawsuit in order to avoid delay and future litigation expense, inconvenience, and interference with ongoing business operations; and

**WHEREAS**, this Settlement reflects a compromise reached after arms-length bargaining, including, but not limited to participation in a court-supervised mediation, and shall not be construed as an admission or concession by any Party as to the truth or validity of any

substantive or procedural allegation, claim, or defense asserted in this or any other action or proceeding; and

**WHEREAS**, this Agreement is subject to and conditioned upon initial and final approval by the Court and the other conditions specified herein.

**NOW, THEREFORE**, it is hereby **STIPULATED** and **AGREED** by and between the undersigned Parties that the Action is settled, subject to the Court's approval, pursuant to the following terms and conditions:

1.      **Definitions**.

**"Action"** means the above-captioned litigation.

**"Agreement"** means this Class and Collective Action Settlement Agreement, inclusive of all exhibits.

**"CAFA Notice"** means the notice to be sent by Defendants to appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

**"CAFA Notice Period"** means the ninety-day (90) period immediately following the date the CAFA Notice is served on the appropriate state and federal officials.

**"Claim Form"** means the form, attached here to as part of Exhibit B, provided to the Class Members by the TPA pursuant to the Court's preliminary approval order in order to obtain their Settlement Share under this Settlement Agreement, as set forth in Exhibit A attached to this Settlement Agreement.

**"Preliminary Approval Date"** means the date on which the Court dockets an order preliminarily approving the Settlement.

**"Final Fairness Hearing"** means the hearing to be requested by the Parties and conducted by the Court, following the expiration of the CAFA Notice Period, at which time the Parties will request the Court to approve the fairness, reasonableness, and adequacy of the terms and conditions of the proposed Settlement and this Agreement, to dismiss the Action with prejudice, and to enter an Order of Final Approval and Final Judgment (the "Final Approval Order").

**"Final Approval Date"** means the date on which the Court dockets the Final Approval Order.

**"Class Counsel"** means Kennedy Hodges, LLP (4409 Montrose Blvd., Ste. 200, Houston, TX 77006).

**"Class Members"** means the Named Plaintiff and all other individuals who were employed by Defendants as Territory Service Representatives in the State of New York who were provided overtime compensation pursuant to the "fluctuating workweek" ("FWW") method at any point between June 5, 2011 and December 31, 2016, all of whom are listed in Exhibit A.

**"Court"** means the United States District Court for the Southern District of New York (Judge Vernon S. Broderick).

**"Defendants"** means The Scotts Company, LLC and E.G. Systems, Inc.

**"Defense Counsel"** means Hunton Andrews Kurth (200 Park Ave #53, New York, NY 10166; 1111 Brickell Avenue, Suite 2500, Miami, FL 33131; and Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, VA 23219).

**"Effective Date"** means the later of: (i) the day after expiration of the time for appeal from the Court's Final Approval Order or (ii) if a timely appeal from such Order is instituted, the day after the final resolution of the appeal (including any requests for rehearing and/or petitions

for writ of certiorari) and/or the expiration of any time period for any further appeal or judicial review, resulting in the final judicial approval of the Agreement and dismissal with prejudice of the Action.

"**Notice**" means the Notice to be sent to the Class Members by the TPA, which will be substantially in the form attached as Exhibit B.

"**Parties**" means the Named Plaintiff and Defendants.

"**Named Plaintiff**" means Geramie Hamsher.

"**Released Parties**" means (i) Defendants; (ii) any of their past, present, and/or future parents, owners, subsidiaries, divisions, affiliates, successors, assigns, and predecessors including but not limited to TruGreen Limited Partnership and its parents, subsidiaries, and affiliates; and (iii) any past, present, and/or future directors, officers, shareholders, insurers, employees, lawyers, agents, and/or employee benefit or welfare programs or plans of any entity in parts (i) or (ii) of this definition.

"**Settlement**" means the terms, conditions, and obligations described in this Agreement.

"**Settlement Share**" means, for each Class Member, the gross amount allocated to him/her according to Exhibit A, less the employer-side payroll taxes and withholdings determined by the TPA to be due on the wage portion of that amount.[1]

"**TPA**" means Simpluris who will administer the settlement notice and payment process and be retained and compensated for its services by Class Counsel.

---

[1]   As described in Sections 11-12 below, the amounts to Class Members will be enhanced if the Court disapproves any portion of the extra payment to the Named Plaintiff or Class Counsel's requested attorneys' fees or expenses.

2.     **Class Certification**.  For the sole purposes of this Settlement, the Parties will request that the Court certify the following settlement class pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. Section 216(b) of the Fair Labor Standards Act:  "All Territory Service Representatives employed by either Defendant in New York who, during any workweek between June 5, 2011 and December 31, 2016, had their overtime pay calculated pursuant to the fluctuating workweek method."  These Class Members are identified in Exhibit A.  The parties agree that this stipulation to class certification is for settlement purposes only.  If the Settlement is not finally approved by the Court, Defendants' stipulation as to the certification of the above settlement class will be null and void and will not be used or relied on by Plaintiff, Class Counsel, or any Class Member for any purpose in this Action.  Regardless of whether the Settlement is finally approved, Defendants' stipulation to the certification of the above settlement class will not be used or relied on by Plaintiffs, Class Counsel, or any Class Member in any other judicial, administrative, or arbitral proceeding.

3.     **Conditions Precedent**.  This Settlement is conditioned on: (i) the Court's entry of the Final Approval Order without any payment by Defendant beyond the Maximum Settlement Payment (as described in Section 4 below) and the Court's dismissal of the Action with prejudice; (ii) passage of the Effective Date; and (iii) not more than 10% of the Class Members timely and properly requesting exclusion from the Settlement (subject to Defendants' right to choose whether to cancel this Agreement as described in Section 8 below).

4.     **Maximum Settlement Payment**.  Defendants' Maximum Settlement Payment under this Settlement will be $1,070,000.00 (inclusive of any employer-side payroll taxes and withholdings determined by the TPA to be due on the wage portion of the Settlement Shares) and will be allocated as follows: (i) payments to Class Members totaling $695,583.54 pursuant to

Section 10 below; (ii) a payment to the Named Plaintiff of $2,500 pursuant to Section 11 below; (iii) attorneys' fees of up to $356,666.67 payable to Class Counsel pursuant to Section 12 below; (iv) litigation expenses of up to $9,649.79 payable to Class Counsel pursuant to Section 12 below; and (v) claims administration expenses of up to $5,600 payable to Class Counsel pursuant to Section 12 below.  Defendants' payment of the Maximum Settlement Amount constitutes Defendants' **entire** potential monetary contribution to this Settlement.  All monies will remain the property of Defendants until seven (7) days after the Effective Date, at which time Defendants will deliver to the TPA the Maximum Settlement Payment minus the value of the Settlement Shares allocated to Class Members who fail to submit a timely and proper Claim Form as outlined in Section 8(C) below and/or who timely and properly exclude themselves from the Settlement as outlined in Section 8(E) below.  Upon receipt, the TPA shall transfer the funds into a Qualified Settlement Fund pursuant to Internal Revenue Code §1.468B-1.   All disbursements under this Agreement shall be made by the TPA from the Qualified Settlement Fund.

     **5.**    **Release**.   In consideration of all payments made by Defendants, the Class Members' eligibility to receive the Settlement Shares, and any other relief described herein and upon passage of the Effective Date:

     A.    All Class Members release and forever discharge the Released Parties from any and all claims, obligations, causes of action, actions, demands, rights, damages (including liquidated damages and other statutory penalties), and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, arising on or before the Final Approval Date, related to unpaid overtime and/or minimum wage compensation, any wage notices or wage statements, pay frequency, and any "spread of hours" premiums,

including but not limited to claims which were pled in the Action and/or reasonably related to claims that were pled in the Action. This release specifically includes a release of all claims and damages, including any statutory penalties, arising under the FLSA, NYLL, WTPA and any state or local wage and hour statute or regulation; provided, however, that Class Members who, as of the date hereof, have opted in to *Vasquez, et al. v. The Scotts Company, LLC, et al.*, Case No. 17-cv-60344 (S.D. Fla.) and who do not timely submit claims forms and become Participating Class Members hereunder shall not be deemed to have waived or released the FLSA claims at issue in *Vasquez*.

        B.     The Named Plaintiff releases and forever discharges the Released Parties from any and all claims, obligations, causes of action, actions, demands, rights, damages (including liquidated damages and other statutory penalties), and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, arising on or before the Final Approval Date.

       **6.**    **Preliminary Approval**. Plaintiffs will file with the Court a motion and supporting memorandum seeking the entry of an order preliminarily certifying the proposed settlement class for settlement purposes only, preliminarily approving the Settlement, authorizing distribution of the Notice and Claims Form to all Class Members, and setting a date for a Final Fairness Hearing. The motion will include a proposed order substantially in the form attached as Exhibit C. Class Counsel will afford Defense Counsel a reasonable time to review and offer revisions to the motion and supporting memorandum prior to their filing. If necessary, the Parties will appear before the Court for a hearing related to any of the issues raised by the motion for preliminary approval, including any hearing the Court determines is necessary in order to grant preliminary certification of the proposed settlement class.

7.      **CAFA Notice**.  Within ten (10) business days after the filing of the proposed Agreement with the Court, Defendants will prepare and submit the CAFA Notice to the appropriate state and/or federal officials.

8.      **Class Notice and Claims Procedure**.

A.      Within seven (7) days after the Preliminary Approval Date, Defendants will provide to Class Counsel and the TPA an Excel spreadsheet indicating the name and last known address of each Class Member according to Defendants' most current business records. Class Counsel will not use this information to attempt to contact Class Members in any way, except to respond to inquiries they may receive from Class Members that are initiated by Class Members.

B.      Within fourteen (14) days after the Preliminary Approval Date, the TPA will send by first-class mail the Notice and Claim Form to each Class Member.  If the Postal Service returns any Notice and Claim Form to the TPA with a forwarding address, the TPA will promptly re-mail the Notice and Claim Form to the forwarding address.  If the Postal Service returns any Notice and Claim Form to the TPA without a forwarding address, the TPA will make reasonable efforts to obtain an updated address and promptly re-mail the Notice and Claim Form to any updated address.  The Claims, Objection, and Exclusion Period (defined below) will not be extended pro rata for any Class Member whose original Notice and Claim Form is re-mailed pursuant to this Section.

C.      Class Members who return a properly executed Claim Form to the TPA by postmarking it within sixty (60) days following the date of initial mailing of the Notice and Claim Form (the "Claims, Objection, and Exclusion Period"), and who do not timely submit a request for exclusion, shall become Participating Class Members.   Within seven (7) days

following the expiration of the Claims, Objection, and Exclusion Period, the TPA shall provide

Class Counsel and Defense Counsel with an Excel chart listing the names of the Class Members

who qualify as Participating Class Members, along with the Settlement Share allocated to each

Participating Class Member.  The original Claim Forms shall be submitted to Defense Counsel,

and copies shall be submitted to Class Counsel.  Any Class Member who fails to submit a Claims

Form within the Claims, Objection, and Exclusion Period shall forfeit his/her Settlement Share

but shall nonetheless be bound by the terms of this Agreement, including the Release contained

in Section 5; provided, however, that Class Members who, as of the date hereof, have opted in to

*Vasquez, et al. v. The Scotts Company, LLC, et al.*, Case No. 17-cv-60344 (S.D. Fla.) and who do

not timely submit claims forms and become Participating Class Members hereunder shall not be

deemed to have waived or released the FLSA claims at issue in *Vasquez*.

   D. Class Members who object to the Settlement should do so in writing and

must state the specific basis for their objection.  To be considered, a written objection must be

mailed to the TPA pursuant to the instructions in the Notice and should be postmarked within the

Claims, Objection, and Exclusion Period.  Within seven (7) days following the expiration of the

Claims, Objection, and Exclusion Period, the TPA will send all received objections to Class

Counsel and Defense Counsel.  Class Counsel will file all objections with the Court within two

(2) business days of their receipt from the TPA.  Class Members who fail to make timely

objections in the manner specified in this Section and in the Notice shall be deemed to have

waived any objections and shall be foreclosed from making any objection (whether by appeal or

otherwise) to the Settlement.

   E. Class Members desiring to exclude themselves from the Settlement must

do so in writing.  To be effective, written exclusions must be mailed to the TPA pursuant to the

instructions in the Notice and must be postmarked within the Claims, Objections, and Exclusion Period. Within seven (7) days following the expiration of the Claims, Objections, and Exclusion Period, the TPA will send all received exclusions to Class Counsel and Defense Counsel. Class Counsel will file all exclusions with the Court within two (2) business days of their receipt from the TPA. Class Members who do not timely and properly exclude themselves from the Settlement will be bound by this Settlement, including the Release provision described in Section 5 above. If 10% or more of the Class Members timely and properly requests exclusion from the Settlement, Defendants have the right to declare this Agreement null and void, and, if they do, each Party shall return to the *status quo ante*. Any Class Member who timely and properly requests exclusion will not be entitled to his/her Settlement Share in Exhibit A and will not have any right to object, appeal, or comment on the Settlement.

F.     Any Settlement Shares allocated in Exhibit A to Class Members who fail to submit a timely and proper Claim Form and/or who timely and properly exclude themselves from the Settlement shall be subtracted from the Maximum Settlement Payment and will remain the property of Defendants.

9.     **Final Fairness Hearing**. The Court will conduct the Final Fairness Hearing at a time to be determined by the Court. The Parties will request that the Court conduct this hearing after the CAFA Notice Period has expired. No later than seven (7) days before the Final Fairness Hearing, or at a date specified by the Court, the Named Plaintiff will file with the Court a motion and supporting memorandum seeking entry of the Final Approval Order granting final certification of the proposed settlement class for settlement purposes only, granting final approval of the Settlement, authorizing distribution of the Settlement Shares to the Participating Class Members, approving all other payments due under the Settlement, dismissing the Action

with prejudice, and retaining jurisdiction of the Action to enforce this Agreement. The motion will include a proposed Final Approval Order substantially in the form attached as Exhibit D. Class Counsel will afford Defense Counsel a reasonable time to review and offer revisions to the motion and supporting memorandum prior to their filing.

       **10.**      **Payments to Participating Class Members**.

       A.      The Parties agree that thirty-five percent (35%) of each Class Member's Settlement Share shall be treated as back wages paid by Defendants to each Class Member and that sixty-five percent (65%) shall be treated as non-wage damages, including, but not limited to, liquidated damages and statutory penalties. On each Settlement Share, the TPA shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to the back wage portion of each Settlement Share distributed and shall also deduct from each such share the employer's side taxes due on such amounts. Amounts withheld will be remitted by the TPA from the Qualified Settlement Fund on behalf of the Class Members and Defendants to the appropriate governmental authorities. At the end of the tax year, the TPA will issue to each Class Member an IRS Form W-2 reflecting the portion of his/her Settlement Share attributable to wages and mail such form directly to each Class Member. The non-wage damages portion of each such Settlement Share shall be treated by all parties as non-wage damages, to be reported to the Class Member on an IRS Form 1099, and shall not be subject to withholding taxes.

       B.      In order to recover his/her allocated Settlement Share, a Class Member must qualify as a Participating Class Member by submitting a proper and timely Claim Form and by not excluding himself/herself from the Settlement.

C.      Within twenty-eight (28) days after the Effective Date, the TPA will issue to each Participating Class Member a payroll check in the gross amount of his/her Settlement Share as reflected in Exhibit A and mail the check to the address listed on his/her Notice Form (unless he/she notifies the TPA of an updated address or unless an updated address is provided by the Postal Service as a result of the Notice process described in Section 8 above).  If the Postal Service returns any check to the TPA with a forwarding address, the TPA will promptly re-mail the check to the forwarding address.  If the Postal Service returns any check to the TPA without a forwarding address, the TPA will make reasonable efforts to obtain an updated address and promptly re-mail the check to any updated address.   At the end of the tax year, the TPA will issue to each Participating Class Member who has cashed his/her check an IRS Form W-2 reflecting his/her payment and mail such form directly to each Participating Class Member at the address listed on his/her Notice Form (unless he/she notifies the TPA of an updated address or an updated address is provided by the Postal Service).

D.      The TPA shall include the following release language on the back of each settlement check or, alternatively, on a perforated slip attached to the check if the TPA determines that the release language is too long on the back of the settlement check:

> I have completely released The Scotts Company, LLC and E.G. Systems, Inc., and their current and former parents, owners, affiliates and related entities, successors (including TruGreen), predecessors, and officers and employees, for any and all claims that were or could have been asserted in *Hamsher, et al. v. The Scotts Company, LLC* (U.S. District Court for the Southern District of New York, Civil Action No. 1:17-cv-4206), as more fully described in the Settlement Agreement regarding that case.

E.      Participating Class Members will have one-hundred and twenty (120) calendar days from the date the checks are issued to negotiate them.  Any settlement check un-cashed after one-hundred and twenty (120) calendar days will be forfeited by the Participating

Class Member, and the TPA shall stop payments on all such checks after one-hundred and twenty (120) days.  Participating Class Members shall be bound by the terms of this Agreement even if they fail to timely negotiate their checks.

F. The underlying funds for any settlement check un-cashed after one-hundred and twenty (120) days shall be returned and paid to Defendants within thirty (30) days after the 120-day check-cashing period expires.

G. Released Parties, Class Counsel, and Defense Counsel shall not be liable for checks cashed by persons other than the Participating Class Members.  Each Participating Class Member will be deemed to have released the Released Parties from all liability as set forth in this Agreement, even if his or her check is cashed by a person other than to whom the check is written.

11. **Extra Payment to the Named Plaintiff**.  Subject to the Court's approval, which the Named Plaintiff will seek by motion and which Defendants will not oppose, the TPA will issue to the Named Plaintiff an additional payment of $2,500 to recognize his efforts in bringing and prosecuting this matter.  This Settlement is not contingent on the Court's approval of this extra payment, which is in addition to the Named Plaintiff's individual Settlement Share.  Moreover, this extra payment, to the extent approved by the Court, will be made by the TPA in the form of a non-payroll check and will be delivered to the Named Plaintiff at his last known addresses within twenty-eight (28) days after the Effective Date.  At the end of the tax year, the TPA will issue to the Named Plaintiff an IRS Form 1099 reflecting this payment.  If the Court disapproves any portion of this additional payment, the disapproved monies will be used to enhance, on a *pro rata* basis, the Settlement Shares allocated to the Class Members.

12.     **Payment to Class Counsel**.   Subject to the Court's approval, which Class Counsel will seek by motion and which Defendants will not oppose, within twenty-eight (28) days of the Effective Date, the TPA will issue to Class Counsel a total payment of $371,916.46 to compensate Class Counsel for all attorneys' fees, costs, and expenses (including all expenses incurred by the TPA in administering the Settlement).  The attorneys' fees, costs, and expenses paid under this Section shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs in the Action incurred on behalf of the Named Plaintiff and/or the Class Members, and shall relieve Defendants from any other claims or liability to any other attorney, law firm, or claims administrator for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of the Named Plaintiff and/or the Class Members.  The settlement of this Action is not contingent on the Court's approval of this payment, which is in addition to the amounts paid to Class Members and Plaintiff pursuant to Section 10 above.  At the end of the tax year, the TPA will issue to Class Counsel an IRS Form 1099 reflecting this payment, and Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to Class Counsel.  If the Court disapproves any portion of Class Counsel's requested fees or expenses, the disapproved monies will be used to enhance, on a *pro rata* basis, the Settlement Shares allocated to Class Members.

13.     **Dismissal with Prejudice**.  Upon entry of the Final Approval Order by the Court, the Action will be dismissed with prejudice in its entirety.

14.     **No Representations**.  Except as expressly stated in this Agreement, no Party has made any statement or representation to any other Party regarding this Agreement, and, in

entering into this Settlement, neither Party relies on any statement, representation, or promise not described in this Agreement.

15. **Consent**. Each Party has carefully read and understands this Agreement and has received independent legal advice with respect to the Agreement. Prior to the execution of this Agreement, each Party's attorney reviewed and executed the Agreement after independent investigation and without fraud, duress, or undue influence.

16. **Successors**. This Agreement shall inure to the benefit of and be binding upon each Party's heirs, successors, and assigns.

17. **No Assignments**. No Party has assigned or transferred, or purported to assign or transfer, to any other person or entity any rights or interests pertaining to this Action, this Settlement, or this Agreement.

18. **Negotiated Agreement**. This Agreement constitutes a negotiated contract and is the result of negotiation among the Parties. In interpreting this Agreement, there shall not be any presumption of interpretation against any Party.

19. **No Admissions**. This Agreement is the result of a compromise between the Parties, and nothing in this Agreement constitutes an admission of liability or of the propriety of class certification or collective action certification by any Party with regard to the subject matter of the Action. Nothing set forth in this Agreement, the fact of the Settlement, or any act performed or document executed pursuant to or in furtherance of the Settlement may be construed or be used as an admission or evidence of the validity of any claim or allegation, or of any act, omission, liability or wrongdoing on the part of the Released Parties or as supporting certification in any action or proceeding of any kind whatsoever.

20.  **No Effect on Other Benefits**.  The allocated Settlement Shares and additional payment to the Class Members will not create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by the Released Parties (such as 401(k), pension, bonus, severance, or deferred compensation plans), and no payment made pursuant to this Settlement will be compensation for purposes of such plans/programs, require any contribution or award under such plans/programs, or otherwise require or modify coverage, contributions, or benefits under such plans/programs, and the Class Members will be deemed to have waived all such benefit or compensation plan or program claims, whether known or unknown by them, as part of their releases of claims under this Settlement.

21.  **Approval Not Obtained**.  This Agreement is subject to approval by the Court.  If the Court declines to grant either Preliminary or Final Approval of this Settlement, this Agreement will be null and void and each Party shall return to the *status quo ante*.  In the event an appeal is filed from any of the Court's orders, or any other appellate review is sought prior to the complete administration and implementation of all aspects of the Settlement and/or this Agreement, the administration and implementation of the Settlement and/or this Agreement shall be stayed pending final resolution of the appeal or other appellate review.

22.  **Class Members Bound**.  Because of the number of Class Members, it is impractical to have each Class Member execute this Settlement.  The Class Notice will inform all Class Members of the binding nature of the releases described above, which shall have the same force and effect as if this Agreement were executed by each Class Member.

23.  **Duty to Defend**.  The Parties will abide by all terms of this Agreement in good faith, will fully support the Agreement's approval and enforcement, and will defend the

Agreement from any legal challenge, whether by appeal or collateral attack.  If the Court disapproves the Settlement, the Parties will work in good faith to modify the settlement terms as reasonably necessary to obtain Court approval.

24.     **Warranty of Authority**.  Each signatory below warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party for whom he/she purports to sign.

25.     **Evidentiary Privilege**.  This Agreement falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408 or any other comparable rule of evidence.

26.     **Applicable Law**.  This Agreement will be governed, enforced, and interpreted according to New York law.

27.     **Further Actions**.  Going forward, the Parties will work in good faith to prepare and execute any documents deemed reasonably necessary to consummate, evidence, or confirm the terms of this Settlement and to ensure the prompt approval and administration of this Settlement.

28.     **Execution**.  This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.  All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

29.     **Use and Return of Defendants' Documents and Data**.  The Named Plaintiff and Class Counsel agree that none of the documents and data provided to them by Defendants in relation to this Action shall be used for any purpose other than settlement of this Action.  Should

DocuSign Envelope ID: C948122A-DECF-4AF8-A97D-7ED2D17B3254

the Named Plaintiff or Class Counsel have any such documents or data in any format, the Named

Plaintiff and Class Counsel agree to return such documents and data within ten (10) days after a

specific request from Defendants and after all other obligations under this Agreement have been

satisfied and/or implemented.

      **IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby

execute this Agreement on the dates indicated below:

Dated: _7/18/2018_____

_____
Plaintiff Geramie Hamsher

Dated: __7/18/2018____

_____
Class Counsel, Kennedy Hodges, LLP

Dated: _____

_____
[NAME]
For The Scotts Company, LLC

Dated: _____

_____
Kevin Mann
For E.G. Systems, Inc.

Dated: _____

_____
Defendants' Counsel, Hunton Andrews Kurth

the Named Plaintiff or Class Counsel have any such documents or data in any format, the Named Plaintiff and Class Counsel agree to return such documents and data within ten (10) days after a specific request from Defendants and after all other obligations under this Agreement have been satisfied and/or implemented.

 **IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____

      _____
      Plaintiff Geramie Hamsher

Dated: _____

      _____
      Class Counsel, Kennedy Hodges, LLP

Dated: 7/19/18

      _____
      Ivan Smith
      For The Scotts Company, LLC

Dated: _____

      _____
      Kevin Mann
      For E.G. Systems, Inc.

Dated: _____

      _____
      Defendants' Counsel, Hunton Andrews Kurth

the Named Plaintiff or Class Counsel have any such documents or data in any format, the Named

Plaintiff and Class Counsel agree to return such documents and data within ten (10) days after a

specific request from Defendants and after all other obligations under this Agreement have been

satisfied and/or implemented.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby

execute this Agreement on the dates indicated below:

Dated: _____        _____
                              Plaintiff Geramie Hamsher

Dated: _____        _____
                              Class Counsel, Kennedy Hodges, LLP

Dated: _____        _____
                              Ivan Smith
                              For The Scotts Company, LLC

Dated: 7/18/2018              _____
                              Kevin Mann
                              For E.G. Systems, Inc.

Dated: 7/19/18               _____
                              Defendants' Counsel, Hunton Andrews Kurth

19

**HAMSHER V. SCOTTS SETTLEMENT EXHIBIT A**

|  | Employee # | Name | Net to Class Member |
|---|---|---|---|
| 1 | 8770 | BRANDON J BETANCES | $ 97.64 |
| 2 | 15360 | FREDDY TIRSO ROSARIO | $ 644.96 |
| 3 | 17703 | JACOB RICHARD PERUCKI | $ 12,379.45 |
| 4 | 18799 | JAMES H NEAL | $ 2,105.05 |
| 5 | 20708 | ANDRES ARANGO | $ 22,366.06 |
| 6 | 20710 | FRANK RAPPA | $ 1,627.38 |
| 7 | 20714 | BELVIN ADDISON NOTTINGHAM | $ 12,390.88 |
| 8 | 20722 | JULIUS T CHILDRESS | $ 9,974.60 |
| 9 | 20723 | JOHN P SCHERIFF | $ 18,004.45 |
| 10 | 20724 | MARCUS MORTON | $ 8,304.59 |
| 11 | 20727 | GEORGE BLAIR COLLINS | $ 2,529.71 |
| 12 | 20755 | FRANK X MAYNARD | $ 3,483.53 |
| 13 | 20762 | TAURUS DARON REED | $ 9,238.79 |
| 14 | 21209 | WILLIAM DAVID LEICHT | $ 11,896.08 |
| 15 | 23659 | SHAWN MYERS | $ 4,023.96 |
| 16 | 25345 | NICOLAS EARL EBERSOLD | $ 2,196.75 |
| 17 | 26252 | BRIAN JAMES LOGAN JR | $ 1,662.30 |
| 18 | 26667 | MARC JOHN LETOURNEAU JR | $ 19,746.04 |
| 19 | 26690 | MICHAEL E THURSTON | $ 19,310.35 |
| 20 | 26767 | ROBERT LEE WILSON | $ 2,527.55 |
| 21 | 26928 | LUIS ALBERTO RAMOS | $ 3,983.35 |
| 22 | 27005 | FRANK VISCIO | $ 3,708.80 |
| 23 | 27045 | CHRISTOPHER KARLE | $ 6,580.49 |
| 24 | 29955 | DAVID JOHN ZELIKOFF | $ 3,112.44 |
| 25 | 30161 | JOSEPH MORRIS | $ 1,396.89 |
| 26 | 31909 | JOSE ANTONIO ANIAS | $ 1,654.45 |
| 27 | 32301 | MICHAEL ANTHONY ROMAN | $ 708.31 |
| 28 | 32306 | UNIQUE SHABAZZ ALLAH OCCENA | $ 2,712.24 |
| 29 | 32310 | BRADLEY J MARTINSEN | $ 1,188.16 |
| 30 | 32990 | ERIC VICTOR MRZYWKA | $ 6,832.28 |
| 31 | 33333 | RICHARD M DOLL | $ 647.50 |
| 32 | 33851 | JUSTIN ROBERT DANIEL | $ 1,668.35 |
| 33 | 33886 | CHARLES A AVERY | $ 458.00 |
| 34 | 33913 | MICHAEL A MUSILLO | $ 4,110.56 |
| 35 | 33916 | THOMAS G ERCKERT | $ 176.09 |
| 36 | 33950 | LUKE A ZDATNY | $ 3,138.73 |
| 37 | 33964 | BRETT P MANCINI | $ 99.01 |
| 38 | 34063 | ROBERTO ANDRES BARRIONUEVO | $ 97.64 |
| 39 | 34120 | ISAAC VILLA | $ 1,218.92 |
| 40 | 34128 | SHADY WESSON | $ 2,432.01 |
| 41 | 34129 | STEVE A SPAGNOLA | $ 744.16 |
| 42 | 34163 | THOMAS JOSEPH CANTONE | $ 97.64 |
| 43 | 34174 | BRYAN A SMITH | $ 5,488.81 |
| 44 | 34207 | EVAN WILLIAM JONES | $ 1,977.80 |
| 45 | 34239 | DEREK DOBOL | $ 6,569.35 |

Exhibit A

| 46 | 34291 | VANDARA NGUON | $ | 3,984.99 |
| 47 | 34449 | JIMMY GUY WILLIAMS | $ | 942.41 |
| 48 | 37488 | FREDERICK T STEWART | $ | 556.12 |
| 49 | 37566 | STEPHEN ROBERT MACARTNEY | $ | 319.69 |
| 50 | 37571 | MICHAEL D TRAPPEN | $ | 1,627.38 |
| 51 | 37654 | CHRISTOPHER L O'LOUGHLIN | $ | 3,188.80 |
| 52 | 37656 | TIMOTHY EARL HAMMOND JR | $ | 2,233.07 |
| 53 | 37672 | MARK D ALLESANDRO | $ | 97.64 |
| 54 | 37702 | THOMAS JACOB SIMANO | $ | 1,535.15 |
| 55 | 37705 | HENRY-EMERSON GULMAYO CARDIEL | $ | 2,719.03 |
| 56 | 37709 | CLIFFORD E GOODMAN | $ | 48.82 |
| 57 | 37711 | ZACKARRY PETER KONOPKA | $ | 3,505.99 |
| 58 | 38018 | OMERI W MONROE III | $ | 208.83 |
| 59 | 38070 | GABRIELE ALESSAUDRO SALLUSTI | $ | 772.75 |
| 60 | 38154 | JOSHUA J NOLAN | $ | 434.78 |
| 61 | 38210 | JAMES THOMAS HUGHES | $ | 2,750.02 |
| 62 | 38245 | JARRET B SHERRARD | $ | 272.47 |
| 63 | 38747 | WILLY VOLMAR | $ | 48.82 |
| 64 | 38950 | NICHOLAS GABRIEL STANCIU | $ | 1,350.73 |
| 65 | 38952 | ERIK ARMANDO ARCHAGA | $ | 2,750.14 |
| 66 | 39126 | ACHILLES M RICHARDSON | $ | 2,992.90 |
| 67 | 39187 | LARRY JAMES HARRIS | $ | 8,190.78 |
| 68 | 39232 | MICHAEL SCOTT MILLER | $ | 911.61 |
| 69 | 41033 | JASON SANCHO | $ | 8,096.58 |
| 70 | 41350 | JONATHAN W COTTRELL | $ | 2,309.37 |
| 71 | 41473 | GABRIEL RAYMOND STACHOWSKI | $ | 97.64 |
| 72 | 41513 | CHRISTIAN AGUILERA | $ | 146.46 |
| 73 | 41514 | PETER M DUNBAR SR | $ | 97.64 |
| 74 | 41515 | MARVIN A LOZANO | $ | 2,770.99 |
| 75 | 41518 | BRIAN RAY THOMASSEN | $ | 3,053.32 |
| 76 | 41631 | BRANDON MICHAEL CONNER | $ | 433.76 |
| 77 | 41643 | CHRISTOPHER J WOODRICH | $ | 258.36 |
| 78 | 41645 | ALEXANDER M COVILL | $ | 317.49 |
| 79 | 41646 | ANDREW STEVEN TAPLINGER | $ | 2,921.92 |
| 80 | 41647 | MICHAEL DAVID MAIER | $ | 97.64 |
| 81 | 42038 | KYLE STEFFEN O'HARA | $ | 2,923.30 |
| 82 | 42496 | ALEX PATTERSON | $ | 48.82 |
| 83 | 45707 | JOSE VELASQUEZ | $ | 3,190.09 |
| 84 | 42664 | KEVIN FITZPATRICK | $ | 753.02 |
| 85 | 42675 | MICHAEL RAGUSA | $ | 658.41 |
| 86 | 42783 | CHARLIE ZUNIGA | $ | 1,256.24 |
| 87 | 42818 | ALFO ESPOSITO | $ | 48.82 |
| 88 | 46076 | JEFFREY WIGHT | $ | 381.38 |
| 89 | 46690 | RAMON VARGAS | $ | 856.99 |
| 90 | 42942 | KATRELL MAY | $ | 2,423.30 |
| 91 | 46788 | BRAD HENDRICKSON | $ | 316.58 |
| 92 | 43075 | STEVEN CORTES | $ | 229.53 |
| 93 | 47027 | ANTHONY TAVOLINO | $ | 969.99 |
| 94 | 45048 | MATTHEW P ABRUZZO | $ | 1,601.60 |
| 95 | 45069 | MALIK DAWUD TOPPINS | $ | 2,372.68 |

| | | | | |
|---|---|---|---|---|
| 96 | 47035 | GIOVANNI EMMANUEL LOZANO | $ | 5,192.49 |
| 97 | 45071 | FRANCIS G LYNAM JR | $ | 2,734.94 |
| 98 | 45414 | MELISSA J TOPPING-KOVARY | $ | 3,058.25 |
| 99 | 45683 | JONATHAN PEREZ | $ | 840.42 |
| 100 | 45692 | CHRISTOPHER SCHWENZER | $ | 48.82 |
| 101 | 47163 | BRIAN THOMAS | $ | 1,085.03 |
| 102 | 46507 | ALAN JOSEPH OMARA | $ | 2,217.92 |
| 103 | 46508 | LAURENCE MICHAEL BROGGY | $ | 3,137.07 |
| 104 | 45706 | RICHARD KEANE | $ | 845.73 |
| 105 | 41648 | JASON M ERB | $ | 10,218.45 |
| 106 | 42663 | ERRIS MORENO | $ | 6,866.74 |
| 107 | 42839 | JONATHAN MINER | $ | 7,373.85 |
| 108 | 42888 | MATTHEW PHILIP ABAD | $ | 2,453.56 |
| 109 | 42964 | GREGORY TOMSIC | $ | 10,097.11 |
| 110 | 43147 | STEVEN GONZALEZ | $ | 3,433.73 |
| 111 | 45070 | FRANK S CORNICELLI | $ | 6,342.66 |
| 112 | 45693 | JUSTIN PLEASANT | $ | 8,682.45 |
| 113 | 45698 | JESUS CAMACHO | $ | 6,541.66 |
| 114 | 45702 | DONALD RICHARDS | $ | 6,382.29 |
| 115 | 46160 | ROBERT RICHARD GILLETTE | $ | 7,531.13 |
| 116 | 46161 | GERAMIE HAMSHER | $ | 7,039.37 |
| 117 | 46163 | JONATHAN NOVARA | $ | 5,138.36 |
| 118 | 46436 | ATLANTA MATTIS | $ | 5,076.60 |
| 119 | 46437 | ANTHONY DIMARZO | $ | 6,292.22 |
| 120 | 47267 | MICHAEL SPARKS | $ | 1,226.76 |
| 121 | 47505 | SALVATORE CATARINICCHIA | $ | 655.19 |
| 122 | 47261 | TEVIN KINCHEN | $ | 3,657.13 |
| 123 | 47508 | ANTHONY T CHIRICO | $ | 4,828.39 |
| 124 | 47581 | SANDRA GALLANT | $ | 3,120.80 |
| 125 | 47582 | GEORGE ERAZO | $ | 4,645.34 |
| 126 | 47657 | MATTHEW SAVAGE | $ | 890.59 |
| 127 | 47851 | DEVIN MENESES | $ | 7,131.31 |
| 128 | 50377 | MICHAEL W RUSSO | $ | 2,152.26 |
| 129 | 50533 | GERALD PISCITELLI | $ | 4,898.40 |
| 130 | 50536 | WILSON AVILES | $ | 1,985.40 |
| 131 | 50754 | JOHN SKIVINGTON | $ | 5,586.20 |
| 132 | 50757 | TODD WAKEFIELD | $ | 2,042.01 |
| 133 | 50864 | MICHAEL KEIPER | $ | 4,760.80 |
| 134 | 50866 | JOSEPH I SUAREZ | $ | 2,294.61 |
| 135 | 50867 | RAYMOND J FUCCILLO | $ | 4,087.65 |
| 136 | 50868 | DOUGLAS WALSTON | $ | 2,858.49 |
| 137 | 50889 | JUSTIN VANCE | $ | 595.84 |
| 138 | 50908 | ANDROSS WILLIAMS | $ | 4,370.77 |
| 139 | 50915 | GUILLERMO SANTIAGO | $ | 2,193.72 |
| 140 | 51076 | COREY ORMSBEE | $ | 5,720.56 |
| 141 | 51077 | ADAM MCKEEGAN | $ | 3,777.03 |
| 142 | 51078 | ROBERT PATERSON | $ | 1,636.09 |
| 143 | 51084 | ERIC GILLETTE | $ | 7,823.00 |
| 144 | 51086 | DUSTIN LOSS | $ | 2,758.11 |
| 145 | 51087 | JOHN HERNANDEZ | $ | 3,258.51 |

| 146 | 51104 | PETER KANTOWSKI | $ | 1,161.16 |
| 147 | 51211 | SHAWN CROTTY | $ | 97.64 |
| 148 | 51286 | BRANDON TWAMLEY | $ | 5,015.90 |
| 149 | 51287 | LEONARDO RAMOS | $ | 2,649.98 |
| 150 | 51581 | MASON ORMSBEE | $ | 2,553.06 |
| 151 | 51685 | JOHN WILLIAM DUFFUS | $ | 5,424.77 |
| 152 | 51686 | DEVINE TAHEEM WILLIAMS | $ | 6,820.78 |
| 153 | 51687 | MICHAEL JOHN O'TOOLE | $ | 4,532.73 |
| 154 | 51728 | DANIEL DOUGLAS ROSS | $ | 4,453.02 |
| 155 | 51807 | NICK W YTTRIE | $ | 6,783.06 |
| 156 | 51855 | JOHN P GROSSNICKLE | $ | 6,785.00 |
| 157 | 52260 | BRITTANY CAPIZZI | $ | 3,392.01 |
| 158 | 52498 | ALEX RODRIGUEZ | $ | 4,189.88 |
| 159 | 52732 | KEVIN A NERI | $ | 4,056.41 |
| 160 | 52968 | ANGEL VELEZ | $ | 2,668.90 |
| 161 | 52971 | JOSH KHALIL HURT | $ | 2,538.71 |
| 162 | 52990 | ONDRE WISDOM | $ | 1,074.07 |
| 163 | 52991 | AKIM JASMIN | $ | 4,256.93 |
| 164 | 52992 | DESMOND BRENNAN | $ | 2,501.06 |
| 165 | 53025 | EDMUND J JARVIS | $ | 2,980.96 |
| 166 | 53050 | VAN WARNER | $ | 3,571.48 |
| 167 | 53231 | NATE SHERIDAN | $ | 4,237.11 |
| 168 | 53313 | ROBERT WILKINSON | $ | 2,245.79 |
| 169 | 55090 | JOSEPH P HENDRICK | $ | 488.21 |
| 170 | 55093 | GREGORY TESTER | $ | 4,334.29 |
| 171 | 55841 | JIMMY LEE | $ | 5,848.06 |
| 172 | 55842 | JONY GUERRERO MOREIRA | $ | 4,564.51 |
| 173 | 55843 | SEAN EGAN | $ | 5,181.69 |
| 174 | 55844 | DANIEL BOMBACI | $ | 3,707.63 |
| 175 | 55846 | DARSAY WOMACK | $ | 4,478.72 |
| 176 | 55847 | JOSEPH XAVIER MAYNARD | $ | 2,755.47 |
| 177 | 55848 | THOMAS C EGAN | $ | 2,817.91 |
| 178 | 56210 | DONALDO PRADO | $ | 3,784.49 |
| 179 | 56590 | RUSSELL D MANGUSO | $ | 2,320.98 |
| 180 | 56680 | JOHN ANTHONY ALTIERI | $ | 5,097.39 |
| 181 | 56683 | DYLLAN SOMBRITO | $ | 3,078.88 |
| 182 | 56702 | CHRISTOPHER MICHAEL LOPRESTI | $ | 4,090.69 |
| 183 | 56718 | BRANDON JAMES CALLERAME | $ | 3,655.60 |
| 184 | 56722 | TRAVIS J SADLER | $ | 4,728.08 |
| 185 | 56725 | MICHAEL SCOTT FRANKLIN | $ | 4,612.61 |
| 186 | 56726 | DANIEL OWEN VANZILE | $ | 5,337.43 |
| 187 | 57056 | SHAWN TRAUTWEIN | $ | 2,281.49 |
| 188 | 57189 | MITCHELL PULLMAN | $ | 3,976.51 |
| 189 | 57191 | SCOTT C DAVIS | $ | 488.21 |
| 190 | 57338 | MICHAEL SCOTT | $ | 5,187.05 |
| 191 | 57607 | JAQUAN PATE | $ | 4,370.61 |
| 192 | 57760 | DANIEL JAMES KRZYWICK | $ | 3,302.19 |
| 193 | 57873 | JEFFREY DANIEL SPENCER | $ | 3,639.27 |
| 194 | 57995 | ANGELO HAMM | $ | 1,015.76 |
| 195 | 57998 | ROBERT LEE GRANT | $ | 3,476.61 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and** | § | |
| **on Behalf of All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **v.** | § | |
| | § | |
| | § | |
| **THE SCOTTS COMPANY, LLC, and EG** | § | |
| **SYSTEMS, INC.,** | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**TO:**    [*INSERT CLASS MEMBER NAME*]

<u>**CLASS AND COLLECTIVE ACTION SETTLEMENT NOTICE**</u>

YOU ARE COVERED BY THE SETTLEMENT OF THE ABOVE CLASS AND COLLECTIVE ACTION LAWSUIT.

UNDER THE SETTLEMENT, YOU ARE ELIGIBLE TO RECEIVE A CHECK IN THE AMOUNT OF $[*INSERT CLASS MEMBER'S SETTLEMENT SHARE AMOUNT*], SUBJECT TO WITHOLDINGS FOR TAXES.

READ THIS DOCUMENT CAREFULLY. IT SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.

| |
|---|
| **1.      Why did I get this notice?** |

The United States District Court for the Southern District of New York (the "Court") presides over this Lawsuit, which was filed with the Court in June 2017 by the Plaintiff Geramie Hamsher against Defendants E.G. Systems, Inc. and the Scotts Company, LLC (collectively "Scotts").

This Lawsuit concerns the calculation of overtime pay of the Plaintiff and other employees of Scotts located in New York, and it also concerns claims related to wage notices and wage statements. Based on Scotts' payroll records, you are covered by this Lawsuit. As such, you are considered a "**Class Member**" in the Lawsuit.

The Lawsuit has been settled. **This Notice informs you of the steps you must take if you wish to participate in the settlement, exclude yourself from the settlement, or object to the settlement.**

Exhibit B

| **2.** | **What is the lawsuit about?** |
|---|---|

Under Federal and New York law, certain employees are entitled to overtime pay for hours worked over 40 in a week.  This Lawsuit challenges the manner in which Scotts calculated overtime pay for its territory service representatives.  Scotts paid the Plaintiff and the Class Members under the fluctuating workweek method of 29 C.F.R. § 778.114.  The Plaintiff alleged in this lawsuit that Scotts improperly implemented the fluctuating workweek method and thus, owes the Plaintiff and Class Members damages for unpaid overtime.

In particular, Scotts calculated overtime pay for Class Members by dividing their weekly compensation (including salary and bonuses) by all hours worked to determine a regular rate of pay for the week.  Next, for every hour worked over 40 during the week, Scotts paid additional overtime premium pay equaling one-half of the regular rate of pay.  For example, if, during a particular week, the employee received a $500 salary and worked 50 hours, he/she would receive additional overtime pay of $5 [$10 x ½] for each of his/her 10 overtime hours.  In sum, under this example, the employee would receive additional overtime pay totaling $50 [$5 x 10 hrs] for the week.

In this Lawsuit, Plaintiff alleges that Scotts failed to satisfy the requirements of a fluctuating workweek.  Thus, according to Plaintiff, the additional overtime premium pay should have been one-and-one-half times the regular rate of pay, for every hour worked over 40 during the week.  In the above example, Plaintiff alleges that the employee should have received additional overtime pay totaling $187.50 [($500 / 40) x 1.5 x 10] for the week.

Plaintiff also alleges that Scotts failed to provide new hire wage notices and correct weekly wage statements and failed to provide "spread of hours" premium pay for any days in which territory service representatives worked in excess of ten hours per day under New York law.

Scotts disagrees with Plaintiff's legal claims and contends that it properly calculated and paid all wages due and owed to its territory service representatives.

The Court has not decided who would win the Lawsuit.  By reaching a settlement, Plaintiff and Scotts reached an amicable resolution of their dispute, and all parties avoided the costs associated with further litigation and the potential risk of losing the Lawsuit.

| **3.** | **What does the settlement provide?** |
|---|---|

Scotts has agreed to pay $1,070,000.00 to settle the Lawsuit.  Under the proposed settlement terms, 195 Class Members are eligible to share in $695,583.54.  You are receiving this Notice because it was determined that you are a Class Member and entitled to participate in the settlement.  Your share of the settlement amount is set forth on Page 1 of this Notice.  The remaining $374,416.46 will be used to compensate the lawyers identified in Section 7 below for their legal fees and expenses, to compensate a third-party firm for various settlement administrative expenses, and to

provide the named representative Plaintiff with a $2,500  payment in recognition of his efforts to obtain this settlement on behalf of the Class Members.

A portion of your settlement payment will be characterized as wage income, and subject to payroll and income taxes and withholdings.  These taxes and withholdings will be made to your settlement check and, at the end of the tax year, you will receive an IRS Form W-2 reporting the payment and withholdings.  A portion of your settlement payment will be characterized as non-wage income and not subject to applicable employment taxes and withholdings.  At the end of the tax year, you will receive a separate IRS Form 1099 reporting these non-wage payments.

| **4.   Why is there a settlement?** |
| --- |

The settlement is a compromise.  The settlement allows the parties to avoid the costs and risks of further litigation and appeals, and it provides money to Class Members without significant delay. In reaching a settlement, Scotts denies that it violated any laws and states that it entered into the settlement agreement in order to amicably resolve this dispute on mutually-agreeable terms.

| **5.        What are my rights?** |
| --- |

You will receive money from the Settlement only if you make a claim, by submitting a valid Claim Form. You can make a claim to receive a Settlement Payment by filling out the enclosed Claim Form. You must review the information on the Claim Form, and then sign and date the Claim Form and submit it to the Claims Administrator in the enclosed envelope.

**Your completed Claim Form must be postmarked no later than _____[60 days].**

If you submit a timely, proper, and valid Claim Form, you will receive your Settlement Payment after the Court enters Final Approval of the Settlement, and all appeals have been resolved.

> **_A._** If you do nothing, and you are a Class Member, you will remain in the Class, but you will get no money from this Settlement. All of the Court's orders will apply to you.  Moreover, the release of claims discussed in Part 6 below will apply to you, and you will not be able to file your own lawsuit about the claims in this case because you will still be bound by the Settlement and by the Release set forth on the enclosed Claim Form.

> **_B._** If you do not wish to be a part of the Settlement, you must exclude yourself from the Settlement by following the process below. Your request for exclusion must state that you wish to be excluded from the settlement in *Hamsher v. The Scotts Co., LLC, et al.*, and must include your full name, address, and telephone number, and you must personally sign the letter.

> If you exclude yourself, you will not receive a Settlement Payment and you will not be bound by the Settlement.

4

***To be valid, the exclusion request must be postmarked no later than [INSERT DATE], and it must be mailed to***:

The Scotts Overtime Lawsuit
c/o
[Insert address]

Class Counsel will ensure that all valid and timely exclusion letters are filed with the Court. You cannot exclude yourself by phone or by e-mail.

***Importantly, if you ask to be excluded from the settlement, you will not receive any settlement payment, and you cannot object to the settlement.***  If you exclude yourself, you will not be legally bound by the settlement or the release of legal claims against Scotts.

<u>**C.**</u>   You may object to the settlement if, for any reason, you believe it should not be approved by the Court.  The Court will consider your objections in deciding whether to approve the settlement.

To object to the settlement, you should prepare a letter stating that you object to the settlement in the *Hamsher v. The Scotts Co., LLC*.  The letter should include your full name, address, telephone number, and signature, and it should state all the reasons why you object to the settlement.  If you have objected to any other class action lawsuit during any time within the last five years, you should identify each lawsuit and describe the outcome of your objection.  If you wish to speak during the hearing referenced in Part 9 below, you must state so in your written objection and specifically identify all witnesses and materials that you intend to present at the hearing.

***To be valid, an objection should be postmarked on or before [INSERT DATE], and it should be mailed to***:

The Scotts Overtime Lawsuit
c/o
[Insert Address]

Class Counsel will ensure that all valid and timely objections are filed with the Court.  If you do not make a timely and proper objection, you will be deemed to have waived any and all objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the settlement and you will not be heard during the hearing.

| **6.**     **What do I give up by not excluding myself?** |
|---|

You have the option to exclude yourself from this lawsuit.  If you do not do so by following the procedure described in Section 5, you will release and forever discharge Scotts and all of its affiliates and agents from all wage and hour claims covering the period June 5, 2011 through the

Final Approval Order under the Fair Labor Standards Act, the New York Labor Law, and the Wage Theft Prevention Act that were pled in the Lawsuit or claims reasonably related to claims plead in the Lawsuit.

If you currently have a pending legal claim or lawsuit against Scotts or if you anticipate filing a future legal claim or lawsuit based on events that already have taken place, you should promptly consult with your attorney about this settlement and the impact of this release on your current or anticipated legal claims or lawsuits.

| | |
|---|---|
| **7.** | **Do I have a lawyer in this case?** |

The Court has designated the following lawyer to serve as "Class Counsel" and to represent the interests of Plaintiff and the Class Members:  Attorney Galvin Kennedy of Kennedy Hodges, LLP (4409 Montrose Blvd, Ste. 200, Houston, TX  77006) (Phone: 713-523-0001; Website: www.kennedyhodges.com).  However, nothing prohibits you from speaking with other lawyers about the Lawsuit or this Notice.

The above lawyer represents your legal interests and will answer your questions in strict confidence.  If you call, please identify yourself as a "Class Member" in the "The Scotts Overtime Lawsuit" and ask to speak with one of the above attorneys.

| | |
|---|---|
| **8.** | **How do the Plaintiff's attorneys get paid?** |

The lawyers identified in Section 7 above have worked on the lawsuit without receiving any payments for their time or out-of-pocket expenses.  Under the settlement, these lawyers will ask the Court for attorneys' fees of $356,666.67 plus out-of-pocket expenses and settlement administration costs totaling $15,249.79.  The requested attorneys' fees equal 33 1/3% of the total settlement fund.

You will *not* pay any additional lawyer's fees or expenses out of your individual share of the settlement proceeds.

| | |
|---|---|
| **9.** | **When and where will the Court decide whether to approve the settlement?** |

The Court will hold a hearing to decide whether to approve the settlement.  ***You are not required or expected to attend that hearing.***  However, you are welcome to attend.

At the hearing, the Court will consider whether the settlement (including the requested attorneys' fees) is fair and reasonable.  The Court will consider all written objections to the settlement and will hear from any Class Members who object to the settlement.

The Court will hold the hearing on [*insert date and time*] at the United States District Court for the Southern District of New York located at _____ [*insert*], New York, New York.

6

| 10. | How do I obtain more information? |
|---|---|

This Notice summarizes the most important aspects of the settlement.  You can get a copy of the entire settlement agreement as well as the underlying Court pleadings by calling the attorneys listed in Section 7 above or the Claim Administrator identified below:

**[Insert information].**


Date:   [*insert*], 2018         Approved:   _____
                                             U.S. DISTRICT COURT JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and** | § | |
| **on Behalf of All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **v.** | § | |
| | § | |
| | § | |
| **THE SCOTTS COMPANY, LLC, and EG** | § | |
| **SYSTEMS, INC.,** | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

_____

**SETTLEMENT CLAIM FORM AND RELEASE OF CLAIMS**
_____

[To be pre-inserted by the Claims Administrator:]
Name:
Claim Number:
Address:
City, State, Zip Code:

**This form must be postmarked no later than [60 days from the date of mailing].**

<u>**Verification:**</u>

Please verify your identity by providing the last four digits of your Social Security Number and verify your address above by signing below.  If the address above is incorrect, please give the correct address in the space below. The address you list is the address where the check will be mailed.

Address Correction Only:

_____          _____
Street Address or P.O. Box                           Last Four Digits of Social Security Number

_____
City, State, Zip Code

By signing below, I swear that: (a) I am the person named above; and (b) during at least some portion of the period from June 5, 2011 to December 31, 2016, I worked for either E.G. Systems, Inc. and/or The Scotts Company, LLC in the state of New York.

**Release of Claims:**

I hereby irrevocably and unconditionally forever and fully release (and covenant not to sue) E.G. Systems, Inc. and The Scotts Company, LLC, including any of their past, present, and/or future parents, owners, subsidiaries, divisions, affiliates, successors, assigns, and predecessors including but not limited to TruGreen Limited Partnership and its parents, subsidiaries, and affiliates, and any past, present, and/or future directors, officers, shareholders, insurers, employees, lawyers, agents, and/or employee benefit or welfare programs or plans of any above the above-listed entities ("the Released Parties") from any and all claims, obligations, causes of action, actions, demands, rights, damages (including liquidated damages and other statutory penalties), and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, arising on or before the Final Approval Date, as defined in the Settlement Agreement, related to unpaid overtime and minimum wage compensation, any wage notices or wage statements, and any "spread of hours" premiums, including but not limited to claims which were pled in the Action and/or reasonably related to claims that were pled in the above-captioned Action.  This release specifically includes a release of all claims and damages, including any statutory penalties, arising under the Fair Labor Standards Act, the New York Labor Law, the Wage Theft Prevention Action and any state or local wage and hour statute or regulation.

I acknowledge that this Settlement Claim Form and Release of Claims is intended to include in its effect all Released Claims as set forth above, arising from my employment with any of the Released Parties, including those claims that I do not know or suspect to exist in my favor against the Released Parties.

**I declare under penalty of perjury that the above information is correct.**

Date:_____

Signature:_____

Print Name: _____

This Claim Form and Release of Claims must be properly completed, signed, and mailed to the Claims Administrator at the following address via First Class United States mail by [60 days from the date of mailing]:

CLAIMS ADMINISTRATOR ADDRESS

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and on Behalf of All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **v.** | § § § | |
| **THE SCOTTS COMPANY, LLC, and EG SYSTEMS, INC.,** **Defendants.** | § § § § § | |

**[PROPOSED] PRELIMINARY SETTLEMENT APPROVAL ORDER**

Before the Court is the Plaintiff's Unopposed Motion for Order Preliminarily Approving the Class and Collective Action Settlement ("Motion") and the pertinent materials filed with that motion. For good cause shown, and as more fully explained below, the Motion is **GRANTED**.  The Court **ORDERS** as follows:

1.  **Preliminary Certification of the Class.**  For the purposes of settlement only, the Court preliminarily finds that the proposed Class, as defined in the Settlement Agreement between the Parties (the "Agreement"), meets the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and that the Class Members are similarly situated within the meaning of 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Accordingly, the Court preliminarily certifies for settlement purposes only the following proposed Class:

> **All Territory Service Representatives employed by either The Scotts Company, LLC or E.G. Systems, Inc. in New York who, during any workweek between June 5, 2011 and December 31, 2016, had their overtime pay calculated pursuant to the fluctuating workweek method.**

Exhibit C

The parties have agreed upon a list of those individuals who are designated, for settlement purposes only, as Class Members, which is attached to the Agreement as Exhibit A.

2. **Nullification.**  This Order will be null and void and of no force or effect, and this action will proceed as though a class had never been certified, if the Agreement is not finally approved by the Court or if the Agreement, after being finally approved by the Court, is invalidated on appeal or terminated pursuant to its own terms.

3. **Class Representatives.**  The Court conditionally approves the Named Plaintiff, Geramie Hamsher, as the Class Representatives for the Class Members.

4. **Class Counsel.**  The Court conditionally appoints as Class Counsel for the Class Galvin B. Kennedy of the law firm of Kennedy Hodges, LLP (4409 Montrose Blvd., Ste. 200, Houston, TX  77006).

5. **Preliminary Approval of the Agreement.**  The proposed settlement set forth in the Agreement appears, upon preliminary review, to be fair, reasonable and adequate. The Agreement is approved for submission to the Class for their consideration at a hearing under Rule 23(e) of the Federal Rules of Civil Procedure.

6. **Claims Administrator.**  Simpluris (the "Claims Administrator") is approved as administrator of the claims process as set forth in the Agreement.

7. **Final Fairness Hearing.**  A Final Fairness Hearing will be held on _____, 2018 at _____ to consider final approval of the Agreement.  Any Class Member who wishes to object to the Agreement will be heard at that time.  Objections must be made in writing by mailing such objections to the Claims Administrator and must be postmarked no later than sixty (60) days after the initial mailing of the Claims Administrator of the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness

2

Hearing.  Each objecting Class Member must state the reasons for the objection to the Agreement.  If the objecting Class Member wishes to speak at the Final Fairness Hearing, the written objection must so state and specifically identify all witnesses and materials that the objecting intends to present.  Any Class Member who fails to properly or timely provide his or her objection to the Claims Administrator will not be heard during the Fairness Hearing and such objection will not be considered by the Court.  The Claims Administrator will promptly provide any objections to Class Counsel and Defense Counsel, and Class Counsel will file them with the Court, as set forth in the Agreement.

8.  **Notice to the Class.**  The Notice of Proposed Settlement of the Class and Collective Action Lawsuit and Fairness Hearing (the "Notice") attached as Exhibit B to the Agreement is approved.  The Court orders that the Claims Administrator mail the Notice via first-class mail to the Class Members within fourteen days after the entry date of this Order.  Any member of the Class Members who wishes to receive a payment from the Settlement must execute and return the Settlement Claim Form and Release of Claims to the Claims Administrator within sixty days of the initial mailing of the Notice. The Settlement Claim Form and Release of Claims must be postmarked no later than sixty (60) days after the initial mailing of the Claims Administrator of the Notice.  Any member of the Class who wishes to exclude themselves from the Settlement must do so by submitting a written exclusion as outlined in the Agreement and as directed in the Notice, and mailing it to the Claims Administrator. The Excluding Statement must be postmarked no later than sixty (60) days after the initial mailing of the Claims Administrator of the Notice.  All members of the Class who do not timely and properly exclude themselves from the class will be bound conclusively by all of the terms of the Agreement, if finally approved, and

by any judgment entered upon final approval.  The Claims Administrator will promptly provide all claims and forms and exclusions to Class Counsel and Defense Counsel, and Class Counsel will file them with the Court, as set forth in the Agreement.

9.  **Voiding the Agreement.** Pursuant to the Agreement, if 10% or more of Class Members elect to exclude themselves from the Class, Defendants will have the right, in their sole discretion, to void the Agreement by filing with the Court a notice of withdrawal as set forth in the Agreement.  If Defendants file a timely notice of withdrawal, then the Agreement becomes null and void and this action will resume as it existed immediately prior to the execution of the Agreement

10.  **Order for Settlement Purposes.**  The findings and rulings in this Order are made for the purposes of settlement only and may not be cited or otherwise used to support the certification of any contested class or subclass in this action or any other action.

**So ordered.**

Date: _____          _____

                                   **UNITED STATES DISTRICT JUDGE**

4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and** | § | |
| **on Behalf of All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **v.** | § | |
| | § | |
| | § | |
| **THE SCOTTS COMPANY, LLC, and EG** | § | |
| **SYSTEMS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**[PROPOSED] ORDER APPROVING SETTLEMENT**

Before the Court is the Plaintiff's Unopposed Motion for Final Approval of the Class and Collective Action Settlement and the pertinent materials filed with that motion.

The Court preliminarily approved the settlement agreement that is the subject of this motion (the "Agreement") by order entered on [Insert date] (ECF No. [Insert Number]) (the "Preliminary Approval Order"). A copy of the Agreement is attached to Plaintiff's Motion for Preliminary Approval as an exhibit, and it is incorporated in this Order by reference.

On [Insert date], the Court conducted a hearing (the "Fairness Hearing") to consider final approval of the Agreement. The Court has considered all matters submitted to it at the Fairness Hearing and otherwise, the pleadings on file, the applicable law, and the record.

For good cause shown, and as more fully explained below, the Motion is **GRANTED**. The Court **ORDERS** as follows:

1.     Final Certification of the Class. For settlement purposes only, the Court finds that the proposed Class, as defined in the Settlement Agreement between the Parties

Exhibit D

(the "Agreement"), meets the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and that the Class Members are similarly situated within the meaning of 29 U.S.C. § 216(b). Accordingly, the Court certifies, for settlement purposes only, the following Class:

> **All Territory Service Representatives employed by either The Scotts Company, LLC or E.G. Systems, Inc. in New York who, during any workweek between June 5, 2011 and December 31, 2016, had their overtime pay calculated pursuant to the fluctuating workweek method.**

The parties have agreed upon a list of those individuals who are designated, for settlement purposes only, as Class Members, which is attached to the Agreement as Exhibit A.

2.     Class Representatives. The Court approves the Named Plaintiff, Geramie Hamsher, as the Class Representative.

3.     Class Counsel. The Court finds that Galvin Kennedy of the law firm of Kennedy Hodges, LLP (4409 Montrose Blvd. Suite 200, Houston, TX  77006) has substantial experience representing employees in wage and hour cases across the country and that he has used such experience and resources to aggressively represent the interests of the Class Members. As such, the court approves of Galvin Kennedy and his firm as Class Counsel.

4.     Approval of the Agreement. The Court approves the Agreement and finds that it is a reasonable compromise of the claims that was reached by the Parties after arms-length negotiations. The Agreement is fair, just, reasonable and adequate to, and in the best interest of, the Class Members. It achieves a definite and certain result for the benefit of the Class Members that is preferable to continuing litigation in which the Class Members would necessarily confront substantial risk, uncertainty, delay, and cost. This Order constitutes final approval of the Agreement. The attorneys' fees, litigation expenses,

2

administration costs and incentive award to the lead plaintiff are all reasonable and fair. The Agreement is binding on the parties to it and on all members of the Class except for those Class Members who properly excluded themselves as provided for in the Agreement.

5.      Notice to the Class.  The Court determines that the Notice Materials were given as required by the Preliminary Approval Order. The Court finds that the notice given of the proposed settlement was the best practical notice under the circumstances and provided all members of the Class desiring to object to the settlement with fair and adequate notice of the terms of the settlement and the Fairness Hearing. The Court finds the Notice Materials satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure.

6.      Release of Claims. As of the date this judgment becomes final (meaning that the time for appeal has expired with no appeal taken, all appeals are resolved and none are left pending, or this judgment is affirmed in all material respects after completion of the appellate process), the Class Representative and the Class Members are forever barred from bringing or presenting any action or proceeding against any Released Party that involves or asserts any of the Released Claims (as those terms are defined in the Agreement). The Class Representative and the Class Members are deemed to have released and forever discharged the Released Parties from all Released Claims.

7.      Dismissal with Prejudice. All claims in this action are dismissed with prejudice and without costs against Defendants.

8.      Dispute Resolution. Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Agreement and all matters ancillary to the same.

So ordered.

_____

**UNITED STATES DISTRICT JUDGE**