## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and** | § | |
| **on Behalf of All Others Similarly Situated,** | § | |
| | § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **Plaintiff,** | § | |
| | § | **COLLECTIVE ACTION** |
| **v.** | § | **UNDER 29 U.S.C. § 216(b)** |
| | § | |
| | § | **ECF CASE** |
| **THE SCOTTS COMPANY, LLC, and EG** | § | |
| **SYSTEMS, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.      Introduction. .............................................................................................................. 1

II.     Factual and Procedural Background. .......................................................................... 1

   A.   Nature of Plaintiff's Claims. ................................................................................. 1

   B.   Procedural History. ............................................................................................... 3

   C.   Investigation and Discovery. ................................................................................ 3

   D.   Settlement Negotiations. ....................................................................................... 4

III.    CAFA Notice. ............................................................................................................ 5

IV.     Summary of the Settlement Terms. ........................................................................... 5

   A.   The Settlement Fund. ............................................................................................ 5

   B.   Eligible Employees. .............................................................................................. 5

   C.    Releases. .............................................................................................................. 5

   D.    Allocation Formula. ............................................................................................. 6

   E.   Attorneys' Fees, Litigation Costs, and Service Awards. ..................................... 7

   F.    Settlement Claims Administrator. ........................................................................ 7

V.      ARGUMENT ............................................................................................................ 7

   A.   The Settlement Class Meets the Legal Standard for Class Certification. ............ 7

   B.   Numerosity. ........................................................................................................... 8

   C.   Commonality. ........................................................................................................ 9

   D.   Typicality. ........................................................................................................... 10

E.    Adequacy of the Named Plaintiff. ...................................................................... 11

F.    Certification is Proper Under Rule 23(b)(3). ...................................................... 11

    1.    Common Questions Predominate. ................................................................ 11

    2.    A Class Action is a Superior Mechanism. .................................................. 12

G.    The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Approved in
All Respects. ................................................................................................................ 13

    1.    The Proposed Settlement is Procedurally Fair. .......................................... 14

    2.    The Proposed Settlement is Substantively Fair. ......................................... 16

    Grinnell Factor 1: Litigation Through Trial Would be Complex, Costly, and Long........ 16

    Grinnell Factor 2: The Reaction of the Class Has Been Positive. .................................... 17

    Grinnell Factor 3: Discovery Has Advanced Far Enough to Allow the Parties to Resolve
    the Case Responsibly. ....................................................................................................... 18

    Grinnell Factor 4 and 5: Plaintiffs Would Face Real Risks if the Case Proceeded. ......... 20

    Grinnell Factor 6. Maintaining the Class Through Trial Would Not Be Simple.............. 21

    Grinnell Factor 7. Defendants' Ability to Withstand a Greater Judgment is Not
    Determinative.................................................................................................................... 21

    Grinnell Factor 8 and 9. The Settlement Fund is Fair, Even in Light of the Best Possible
    Recovery and the Attendant Risks of Litigation.............................................................. 22

H.    Approval of the FLSA Settlement is Appropriate Under Federal Law. ........................... 23

VI.    CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................................. 11

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................. 23

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .................................................................................................................................................. 22

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ........................................................................................................................................ 15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)....................................... 14, 16, 22

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................................................................................................................. 9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ......................................... 8

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................. 14

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)............................................... 13

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ......................................................... 7

*Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .................................................................................................................................... 15, 19, 20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .............................. 10, 19, 22, 23

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)............................................................... 9

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ...................................................................... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................... 13

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .................................................................................................................. 10, 12, 15, 16

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub*

*nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)........................................... 16, 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,* No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................................................................ 14

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004).... 16

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................... 20

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) ..................................... 20

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................................................................................................................ 15

*In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124 (2d Cir. 2001) (internal quotation marks omitted), abrogated on other grounds by Mi*les v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006)....................................................... 12

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).......................................... 18

*Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) 13, 19

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986)......................... 9

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) . 18, 20

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)................................. 24

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 17

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................................. 10

*Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ........................................................................................................................................ 19

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005).................................................. 12

*McKenna v. Champion Intern. Corp.*, 747 F.2d 1211 (8th Cir. 1984), abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)................................................. 23

*McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................................................................................... 19, 20

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............... 9, 10, 11, 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).................................... 22

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150 (2d Cir. 1983) .... 9

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................... 8

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ............................................................................................................................... passim

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.,* No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ......................................................................................................... 17

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................................ 10

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................................... 11

*Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ............................................................................................................................... 14

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).... 12

*Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .... 14

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).. 11

*Vasquez, et al. v. The Scotts Company, LLC, et al.*, Case No. 17-cv-60344 (S.D. Fla.) ............... 6

*Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................................................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 14, 15

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......... 18

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................ 18

*Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011)........................................ 21

**STATUTES**

28 U.S.C. § 1715(d) ........................................................................................................ 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ...................................................................................................... 8

Fed. R. Civ. P. 23(b)(3)............................................................................................ 11, 13

Fed. R. Civ. P. 23(e) .................................................................................................... 13

# I.    Introduction.

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"). The Settlement Agreement and related Exhibits is attached hereto as **Exhibit 1**. The parties' $1,070,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff respectfully requests that the Court (1) grant final approval of the Class and Collective Action Settlement Agreement as fair and adequate ("Settlement Agreement") and (2) Final Class Certification and Collective Designation.

On February 1, 2019, the Court took the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement and certifying the proposed class for settlement purposes. Dkt. No. 47. The Court ordered the parties to revise a sentence in the notice to class members and provide an detailed explanation of the expenses incurred by Class Counsel. *Id.* On October 1, 2019, the Court issued a second order approving the proposed notice and setting this matter for Final Fairness Hearing for January 31, 2020 and further ordering the Plaintiff to file a motion for final approval no later than 15 days prior to that hearing. Dkt No. 50.

Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. No Class Member has objected to the settlement, and only one Class Members has opted out. **Ex. C** (Decl. of Jarrod Salinas ("Salinas Decl.")) ¶¶ 11-12. With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## II.    Factual and Procedural Background.

### A.    Nature of Plaintiff's Claims.

Plaintiff and the settlement class are "All Territory Service Representatives employed by

1

Defendant in New York who, during any workweek between June 5, 2011 and December 31, 2016, had their overtime pay calculated pursuant to the fluctuating workweek method" ("Putative Class Members"). Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, by failing to pay them and Putative Class Members overtime wages for all hours worked in excess of forty (40) in all workweeks and failing to provide adequate notice upon hire and wage statements in compliance with the New York Wage Theft Prevention Act.

Specifically, Plaintiff alleged that Defendants did not properly implement the fluctuating workweek ("FWW") method of pay. The fluctuating workweek method, when properly implemented, allows an employer to pay its non-exempt employees at one-half the employees' regular rates of pay for hours worked over 40 as opposed to paying the employees 1 ½ times their regular rates of pay. Employers must meet five specific requirements in order to lawfully pay non-exempt employees under the fluctuating workweek. *See generally* 29 CFR § 778.114. Plaintiff alleged that Defendants issued bonuses which were incompatible with the fixed salary requirement under the FWW, that Defendants subjected Plaintiff to impermissible deductions from Plaintiff's pay when he worked fewer than 40 hours in a workweek, and that Defendants failed to reach a "clear mutual understanding" with Plaintiff regarding the use of the FWW. Defendants denied these allegations and contended that they implemented the FWW method of pay correctly.

Additionally, Plaintiff alleged that Defendants violated the Wage Theft Prevention Act ("WTPA") by failing to provide all of the required information on Plaintiff's wage statements and on documents provided to Plaintiff upon hire. Plaintiff alleged that his wage statements did not accurately reflect how his compensation was calculated, and that Defendant's violations of the requirements of the FWW method of pay eliminated any affirmative defense. Finally, Plaintiff

alleged that he was not paid timely because Defendants paid Plaintiff on a biweekly basis, yet Plaintiff was a manual worker entitled to weekly compensation under New York law. Defendants denied all of Plaintiff's state law claims and contended that they provided Plaintiff and putative class members with all required information on their wage statements and that they complied with the notice upon hire requirements.

**B.    Procedural History.**

On June 5, 2017, Plaintiff Geramie Hamsher ("Plaintiff") filed this wage and hour action against Defendants The Scotts Company, LLC and EG Systems, Inc. ("Defendants") on behalf of himself and other current and former territory service representatives. *See* Dkt. 1. The lawsuit alleged causes of action for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA") and for violations of the New York Labor Law. *See id.*

On March 19, 2018, Plaintiff filed his Unopposed Motion for Leave to File First Amended Complaint. *See* Dkt. 33. Upon the Court's order granting Plaintiff's Motion for Leave, Plaintiff filed his First Amended Complaint, which removed the minimum wage violation under the New York Labor Law and provided additional details to the Plaintiff's allegations of violations of the Wage Theft Prevention Act. *See* Dkt. 36.

**C.    Investigation and Discovery.**

In advance of the Parties' court-ordered mediation before Magistrate Judge Debra Freeman on January 18, 2018, Defendants produced the pay and hours data for the putative class members, which is composed of 195 Territory Service Representatives. *See* Ex. B, Kennedy Decl. ¶¶ 13-16 Plaintiff also served Interrogatories and Request for Production on Defendants related to both class certification and merits issues. *Id.* Defendant likewise served discovery on Plaintiff. *Id.* Plaintiff hired a CPA and forensic and financial consultant (David Breshears) to analyze the data produced

by Defendants and create a damage model for alleged violations of the Fair Labor Standards Act and New York Labor Law. *Id.* After the mediation, Defendants provided Plaintiff with their damage calculations of the alleged violations of the WTPA's wage statement and initial hiring notice requirements.  *Id.* Plaintiff had his expert witness create a competing damage model and discussed same with Defendants.  Defendants also provided copies of Plaintiff's wage statements. *Id.*

### D.    Settlement Negotiations.

On January 18, 2018, the Parties engaged in a court-ordered mediation before Magistrate Judge Debra Freeman in an attempt to resolve the present litigation. The parties spent a full day mediating with Magistrate Judge Debra Freeman in her courtroom.  The parties spent hours together with the Magistrate discussing the strengths and weaknesses of their claims and defenses and related damage analysis. *Id.*  Galvin Kennedy from Kennedy Hodges, LLP appeared for the Plaintiff and the putative class members, and Geramie Hamsher attended by phone.  Ryan Glasgow appeared for the Defendants with Robert Prichard appearing for TruGreen, the company which purchased Scotts in 2016.  The parties determined that they would not be able to resolve the case at the mediation, but agreed to exchange additional information related to the WTPA claim. *See* Ex. B Kennedy Decl. ¶¶ 15-16.

While the Parties did not settle at this mediation, the mediation produced a candid assessment of the strengths and weaknesses of the parties' claims and defenses. The discussion resulted in a narrowing of the issues and clarity on the nature of the claims under the WTPA. Moreover, as a result of the mediation, Plaintiff sought to amend his Complaint to remove certain claims and provide clarity regarding other allegations. *Id.*

Over the ensuing months, the negotiations continued and the parties eventually reached the

Settlement Agreement for which they seek final approval through this motion.

### III.    CAFA Notice.

Defendants sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on July 24, 2018. *See* 28 U.S.C. § 1715(d). The 90-day CAFA notice period concluded on October 22, 2018. *IdError! Bookmark not defined.*.

### IV.    Summary of the Settlement Terms.

#### A.    The Settlement Fund.

The Settlement Agreement creates a common fund of $1,070,000 to settle claims against the Defendants (the "Fund"). Ex. A (Settlement Agreement) § 4. The Fund covers Putative Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs. *Id.*

#### B.    Eligible Employees.

The Settlement Class consists of "All Territory Service Representatives employed by Defendant in New York who, during any workweek between June 5, 2011 and December 31, 2016, had their overtime pay calculated pursuant to the fluctuating workweek method." *See* Ex. A, Settlement Agreement, Section 2.

#### C.    Releases.

Participating Class Members who do not timely opt out of the settlement will release their state and federal wage and hour law claims including claims under the New York Wage Theft Prevention Act and the Fair Labor Standards Act. Ex. A (Settlement Agreement) Section 5., Finally, the Class Representative, Geramie Hamsher, executed a general release. Ex. A (Settlement Agreement) Section 5B.

However, any Class Member who, as of the date of the Settlement being executed, has

opted in to *Vasquez, et al. v. The Scotts Company, LLC, et al.*, Case No. 17-cv-60344 (S.D. Fla.) and who does not timely submit claims forms and become Participating Class Members hereunder shall not be deemed to have waived or released the FLSA claims at issue in *Vasquez*. Such Plaintiffs' FLSA claims shall remain active.

**D.      Allocation Formula.**

Claimants will be paid pursuant to an allocation formula based on available data, which includes information for the number of workweeks during the relevant limitations periods, the hours they recorded and were paid for, the number of pay statements and the amounts they earned during those weeks ("Settlement Share"). *See* Ex. B, ¶ 19, Declaration of Galvin Kennedy (Kennedy Decl.). The allocation table (Exhibit A to the Settlement) was created using an objective formula for each class member. First, the maximum recovery allowed under the law for both the federal and state claims was applied to each class member based on the data produced in electronic format. Then each class member was assigned his or her proportionate share of the net funds available to the class. No class member was given special treatment. Instead the same formula was used for each such class member.

Only Claimants who have submitted valid and timely claim forms will be entitled to a Settlement Share. Ex. A (Settlement Agreement) Section 8, Paragraph C. If settlement checks remain uncashed 120 days after issuance, the funds attributable to such claims will be returned to the Defendants. Ex. A (Settlement Agreement) Section 10, Paragraph E.  One class member filed his claim form after the deadline; however, the parties have agreed to allow him to participate in the Settlement as if he had filed it timely.  His late participation does not affect the allocation paid to any other class member.

**E.**    **Attorneys' Fees, Litigation Costs, and Service Awards.**

Class Counsel have filed a separate Motion for Attorneys' Fees, Reimbursement of Expenses, and for Approval of a Service Award simultaneously with this Motion.

**F.**    **Settlement Claims Administrator.**

The parties selected Simpluris, a class action claims administrator, to administer the settlement. On October 15, 2019, the Claims Administrator mailed the Court-approved Notices to approximately 195 Class Members whose names and addresses were provided by Defendants. (Salinas Decl. ¶ 7).  After the Notices were mailed, the Claims Administrator received 34 Notices returned as undeliverable by the Post Office without updated addresses.  Salinas Decl. ¶ 8 Notices were promptly re-mailed to Class Members for whom new addresses were located. *Id.*  Simpluris used electronic databases to perform a skip trace on class members' whose notices were returned and identified updated addressed for 28 of the Class Members.  Simpluris promptly mailed Notice Packets to those new addresses. *Id.*  Ultimately, Simpluris was unable to locate current addresses for 5 Class members.  *Id.*

The Class Members were notified, among other things, that they could object to or exclude themselves from the settlement.   No Class Member has objected to the Settlement and only one Class Member has opted out of the settlement. *Id*. ¶¶ 10-11.

## V.    <u>ARGUMENT</u>

**A.**    **The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). On February 1, 2019, the Court preliminarily certified the settlement class. *See* Dkt. 47. On October 1, 2019, the Court approved Plaintiff's proposed notice to the settlement class. *See* Dkt.

50. The Court should now grant final certification because the settlement meets all the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement:

> All Territory Service Representatives employed by Defendants in New York who, during any workweek between June 5, 2011 and December 31, 2016, had their overtime pay calculated pursuant to the fluctuating workweek method.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, and one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## B.    Numerosity.

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy the numerosity requirement because there are approximately 195 Class Members.  Ex. B,

Kennedy Decl. ¶ 28.

## C.    Commonality.

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Plaintiffs assert that this case involves common issues, including common claims that Defendants failed to pay them overtime wages in violation of state wage and hour laws, based on their alleged illegal implementation of the fluctuating workweek compensation practices. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had policy of not paying all class members correct overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked")).  Likewise, this case concerns the common question of whether Defendant violated the WTPA by paying manual laborers on a bi-weekly instead of weekly basis. The method of calculating damages for each of these alleged violations is also common across all class members. The facts surrounding each of these issues is common to

all class members because Defendants implemented their pay practices in the same manner for all class members.

**D.    Typicality.**

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Courts have found that typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiffs allege that Defendants failed to pay the Plaintiffs and Class Members overtime pursuant to the same company policy and pattern or practice. Plaintiff also claims that his alleged injuries are the same as those of the Class Members -- that Defendants failed to properly pay them for overtime hours worked. During the relevant period, Defendant used the FWW method of calculating overtime and also issued wage payments on a bi-weekly instead of weekly basis. Courts have found that plaintiffs satisfy the typicality requirement under these circumstances. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *3 (S.D.N.Y. Nov. 15, 2012) (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

E.    **Adequacy of the Named Plaintiff.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Plaintiff asserts that he meets the adequacy requirement because there is no evidence that Plaintiff has interests that are antagonistic to or at odds with those of Class Members. *See Morris*, 859 F. Supp. 2d at 616 (no evidence that named plaintiffs' and class members' interests were at odds). Plaintiff's Counsel also meet the adequacy requirement of Rule 23(a)(4).  Galvin Kennedy of Kennedy Hodges, LLP has served as class counsel in more than 70 wage and hour cases across the country, including the Southern District of New York. *See* Ex. B, Kennedy Decl. ¶ 4.

F.    **Certification is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject

only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136

(2d Cir. 2001) (internal quotation marks omitted), abrogated on other grounds by Mi*les v. Merrill

Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006). The essential

inquiry is whether "liability can be determined on a class-wide basis, even when there are some

individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by

a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean

v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, the Class Members' common factual allegations and common legal theory – that

Defendants failed to pay them overtime wages in violation of state wage and hour laws, based on

their alleged illegal implementation of the fluctuating workweek compensation practices –

predominate over any factual or legal variations among class members. *See Hernandez*, 2012 WL

5862749, at *4 (common factual allegations and legal theory predominated over variations in wage

and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730,

at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged

in a common practice to deny employees overtime pay," and "this issue predominates over any

individual calculations of overtime wages").  The allegation that Defendants should have paid

Class Members weekly instead of bi-weekly likewise predominates over an individualized issues.

## 2.    A Class Action is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class

action device [is] superior to other methods available for a fair and efficient adjudication of the

controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a

non-exclusive list of relevant factors, including whether individual class members wish to bring,

or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[1]

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *7 (S.D.N.Y. Sept. 16, 2011); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Plaintiff and the class members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

Employing the class device here will not only achieve economies of scale for class members but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

### G. The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to insure that it is

---

[1] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted.

procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions").

### 1.    The Proposed Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes*, 2011 WL 4599773, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ.

10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims and defenses, and after extensive arm's-length negotiations and information exchange between the parties. Kennedy Decl. ¶¶ 15-16. Plaintiffs retained an economic expert to analyze the data and perform damages calculations. *Id.* ¶ 13, 19. The parties attended a Settlement Conference before the Honorable Debra Freeman, during which they engaged in a thorough and adversarial exchange regarding their respective claims and defenses. *Id.* ¶ 15-16. Following the Settlement Conference, Plaintiff moved to amend his complaint. *Id.* During the next several months, the parties continued to negotiate, and ultimately reached an agreement, which was memorialized in a formal settlement agreement including all terms. *Id.* ¶ 15. At all times during the settlement process, the parties negotiated on an arm's-length basis. Kennedy Decl. *Id.* These arm's-length negotiations involved counsel and a federal magistrate judge well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes*, 2011 WL 4599822, at *4.

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez*, 2012 WL 5862749, at *2 (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and

hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y.

Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of

the case). The parties here acted responsibly in reaching a settlement after conducting a thorough

investigation into the law and facts. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic

Sec. Litig.*, 2004 WL 2397190, at *12.

## 2.    The Proposed Settlement is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the

substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by

Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district

courts in making this determination. They are: (1) the complexity, expense and likely duration of

the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the

best possible recovery; and (9) the range of reasonableness of the settlement und to a possible

recovery in light of all the attendant risks of litigation. *Id*. at 463. All of the *Grinnell* factors weigh

in favor of final approval of the Settlement Agreement.

### Grinnell Factor 1: Litigation Through Trial Would be Complex, Costly, and Long.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions

are inherently complex and settlement avoids the costs, delays and multitude of other problems

associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174

(S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case

is no exception, with 195 Class Members dispersed throughout New York state. Further litigation

here would cause additional expense and delay. Extensive discovery would be required to establish

collective and class action certification, liability and damages.

Defendants would have opposed any motions for conditional certification of the FLSA

claims and would have filed a motion to decertify a conditionally certified collective action.

Defendants would have also contested any motion to certify a class action of the NYLL

claims, and they would have defended all claims on the merits. In addition, the Parties likely would

have filed cross-motions for summary judgment on the claims and defenses. If the Court denied

the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and Class Members'

were entitled to overtime compensation calculated under the traditional 1.5 method and whether

they are owed damages under the WTPA.  A trial would be lengthy and complex and would

consume tremendous time and resources for the Parties and the Court. Any judgment would likely

be appealed, further extending the litigation. The Settlement, on the other hand, makes monetary

relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell*

factor weighs in favor of approval.

### Grinnell Factor 2: The Reaction of the Class Has Been Positive.

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,*

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be

taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.,* No.

94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the Notice sent to Class

Members included an estimate of each Class Member's award. Ex. A (Class and Collective Notice)

The Notice also informed Rule 23 Class Members of their right to object to or exclude themselves

from the settlement and explained how to do so. *Id*. **No Class Member objected to the settlement**. Salinas Decl. ¶ 11 and 12. Only 1 out of 195 Class Members opted out of the settlement. *Id*. ¶ 1. Class Counsel also received numerous phone calls from Class Members who reacted very positively to the settlement. Kennedy Decl. ¶ 26. This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *See Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### Grinnell Factor 3: Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

The Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks and citation omitted). The Parties' discovery here meets this standard. Plaintiffs' Counsel conducted an in-depth interviews with the named Plaintiff, reviewed many documents, conducted in-depth background research on the Defendants, reviewed wage statements provided to Plaintiff, and analyzed thousands upon thousands of cells of data regarding pay and time records in order to assess the strengths and

weaknesses of the case. Plaintiffs' counsel also conducted through legal research on the claims and defenses including the changes in the law regarding the WTPA claims related to the calculation of damages. Defendants produced data allowing Plaintiffs to calculate damages, including data on the Class Members.

Just as important is Class Counsel's history with these Defendants in particular. In prior litigation regarding the same subject, Class Counsel and Defense counsel herein took approximately 28 depositions of witnesses whose testimony bore on the exact claims raised in this lawsuit. Through such prior discovery of payroll, human resource managers and more than 20 other witnesses, the parties had a deep understanding of the issues in this case from its inception.

The thoroughness of the formal discovery performed here favors preliminary approval. *See Diaz*, 2010 WL 2945556, at *3 (finding, in case settled prior to filing of complaint, that "Class Counsel did substantial work identifying, investigating, and settling Plaintiffs' and the class members' claims."); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (finding that the parties' "efficient, informal exchange of information" was enough discovery to recommend settlement approval); *Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

Courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the amount accomplished in this case. *See, e.g., Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange and no

19

depositions were taken); *Johnson v. Brennan*, 2011 WL 4357376, at \*9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *Diaz*, 2010 WL 5507912, at \*5 (granting final approval of pre-suit class settlement, where informal discovery consisted of pre-suit document exchange); *McMahon*, 2010 WL 2399328, at \*5 (granting final approval where parties conducted informal discovery but no depositions); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at \*6 (E.D.N.Y. Jan. 20, 2010) (approving settlement where parties conducted informal discovery but no depositions). Here, in addition to the Parties' informal information exchange, Plaintiffs had the benefit of reviewing formal discovery that was exchanged. Likewise, Plaintiff counsel's prior knowledge from dozens of witnesses and review of thousands of documents from prior litigation with Defendants assisted Plaintiffs in assessing the claims and damages in this case. Thus, this factor therefore favors preliminary approval.

### Grinnell Factor 4 and 5: Plaintiffs Would Face Real Risks if the Case Proceeded.

Although both Parties are confident in their respective positions, litigation is subject to considerable risk. *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at \*6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. For example, Defendants argued that the New York spread of hours claims simply does not apply to Plaintiffs in this case because their wages never fell below the minimum wage, a prerequisite, so argued Defendant, for the law to apply. While Plaintiff disagreed, the issue is not

perfectly settled. While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development. Plaintiff's Counsel is experienced and realistic, and understands that the resolution of liability issues, and the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

### Grinnell Factor 6. Maintaining the Class Through Trial Would Not Be Simple.

The risk of losing on class certification and maintaining it through trial is also present. The Court has not certified the Rule 23 Class yet, and the Parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing. In opposing class certification, Defendants would argue that the individualized issues predominate over any common issues. Although Plaintiffs disagree with these agreements, they pose a risk to a recovery for the class. Risk, expense, and delay permeate such processes. Settlement eliminates this risk, expense, and delay. This factor favors final approval.

In addition, the Court has not yet authorized Plaintiffs to send notice of the litigation to the FLSA collective pursuant to 29 U.S.C. § 216(b), which Defendants would oppose. If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination again at a later date, after the close of discovery. *See, e.g., Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting motion to decertify collective action). Settlement eliminates the risk and delay inherent in this process.

### Grinnell Factor 7. Defendants' Ability to Withstand a Greater Judgment is Not Determinative.

The parties did not discount the settlement amount based on any argument that Defendants were unable to pay a potential complete recovery for Plaintiff and the class members; therefore,

this factor is not relevant to the court's analysis.

**Grinnell Factor 8 and 9. The Settlement Fund is Fair, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation.**

Defendants have agreed to settle this case for $1,070,000. The amount represents fair and appropriate value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame a motion to decertify any class or collective, succeeded on all claims at trial, and survived an appeal. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.' " *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." By Plaintiffs' Counsel's estimation, the class's total damages for overtime are approximately $970,000 and the total damages for violations of the Wage Theft Prevention Act are approximately $1 million. Defendants, however, have estimated such damages to be substantially lower using an

22

alternative reading of the law. Thus, a settlement of $1,070,000 represents more than half of the total damages claimed using Plaintiff's calculations. The settlement represents a fair and appropriate recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of losing class certification, or having the class decertified, losing on the merits, and losing on appeal.

Here, Class Members have each been allocated an average settlement payment of approximately $3,500, net of attorneys' fees, costs, service awards and administrator costs. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## H.    Approval of the FLSA Settlement is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Reyes*, 2011 WL 4599822, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d. at 1354; *Reyes*, 2011 WL 4599822, at *6. In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the class settlement; (3) approve the FLSA settlement; and (4) dismiss this Action with prejudice.

Dated: January 15, 2019

New York, New York

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By: /s/ Galvin B. Kennedy
Galvin B. Kennedy (admitted *pro hac vice*)
gkennedy@kennedyhodges.com
4409 Montrose Blvd., Ste. 200
Houston, Texas 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

*Counsel for Plaintiff and the Settlement Class*

24

## <u>CERTIFICATE OF CONFERENCE</u>

Defendants are unopposed to this Motion.

<u>/s/ Galvin B. Kennedy</u>
Galvin B. Kennedy

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 16, 2020 a copy of the foregoing instrument was served upon all parties via the Court's electronic case filing system.

<u>/s/ Galvin B. Kennedy</u>
Galvin B. Kennedy