**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GERAMIE HAMSHER, Individually and** | § | |
| **on Behalf of All Others Similarly Situated,** | § | |
| | § | **CIVIL ACTION NO. 1:17-cv-4206** |
| **Plaintiff,** | § | |
| | § | **COLLECTIVE ACTION** |
| **v.** | § | **UNDER 29 U.S.C. § 216(b)** |
| | § | |
| | § | **ECF CASE** |
| **THE SCOTTS COMPANY, LLC, and EG** | § | |
| **SYSTEMS, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, PAYMENT FOR ADMINSTRATION COSTS AND SERVICE AWARD**

## TABLE OF CONTENTS

I.    INTRODUCTION. ........................................................................................................... 1

II.    CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT FUND. ...................................................................................... 2

    A.    The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit. ............................................................. 3

    B.    The *Goldberger* Factors Support an Award of One-Third of the Fund. ......................... 6

        1.    Class Counsel's Time and Labor. ................................................................ 6

        2.    Magnitude and Complexity of the Litigation. ............................................. 8

        3.    Risk of Litigation. ....................................................................................... 9

        4.    Quality of Representation. .......................................................................... 11

        5.    Fee in Relation to the Settlement. .............................................................. 12

        6.    Public Policy Considerations. .................................................................... 14

V.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES AND ADMINISTRATION COSTS UNDER THE SETTLEMENT AGREEMENT. ......................... 19

VI.    NAMED PLAINTIFF GERAMIE HAMSHER SHOULD RECEIVE A MODEST SERVICE AWARD FOR STEPPING FORWARD AND SERVING AS THE CLASS REPRESENTATIVE. .................................................................................................. 19

VII.    CONCLUSION. .......................................................................................................... 20

## **Table of authorities**

**CASES**

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945)................................................................ 14

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d
    182 (2d Cir. 2008).................................................................................................... 4

*Barrentine v. Arkansas- Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................... 9

*Baten v. Mr. Kabob Restaurant Inc. et al.*, 16 Civ. 9559 (Oct. 2019, S.D.N.Y.) (Broderick,
    J.)........................................................................................................................ 17

*Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. Jun.
    30, 2011) ............................................................................................................ 16

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614
    (S.D.N.Y. Jun. 7, 2011) ....................................................................................... 18

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger*,
    209 F.3d 43 (2d Cir. 2000) .................................................................................. 10

*Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198
    (S.D.N.Y. May 11, 2010)...................................................................................... 13

*Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y.1991) (awarding multiplier of 8.74)............. 16

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................... 2, 13, 16

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23,
    2010) ................................................................................................................ 4, 15

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)........................................... 15

*Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29,
    2010) .................................................................................................................. 18

*Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) (Broderick, J.) ................................................................................................ 17

*Escobar et al v. Pret A Manger (USA) Limited et al.*, 17 Civ. 5227 (Feb. 2019, S.D.N.Y) (Broderick, J.) .................................................................................................... 17

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..................................... 9, 12, 15

*Gabal v. Scoutsee Inc. et al.*, 18 Civ. 2236 (Dec. 2018, S.D.N.Y.) (Broderick, J.) ..................... 17

*Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................................... passim

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ........................................................................................................ 18

*Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............. 14, 15

*In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................... 4

*In re Boesky Sec. Litig.*, 888 F. Supp. 551 (S.D.N.Y. 1995) ...................................................... 15

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................... 16

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. Jun. 24, 2010) ........................................................................................................ 13

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) ....... 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................................... 5

*In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........................................................................................................ 12

*In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004) .............................. 5

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............... 19

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)

iv

.................................................................................................................... 18

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov.

26, 2002) ........................................................................................................... 16

*In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007)

............................................................................................................... 4, 5

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996)............................ 9

*In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) ...... 4, 5

*In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) .................................................. 16

*In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug.

24, 1992) ........................................................................................................... 16

*In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...................................... 4, 14

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y.

Nov. 7, 2007) ...................................................................................................... 13

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ............................................................................. 15

*Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004

WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................................................................... 5

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)13,  14,

15, 20

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. Jan. 29, 2002) ..................... 16

*Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942 (9th Cir. 2011) ................................................ 10

*McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ............................................... 3

*Myers v Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).................................................................... 11

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148,

2009 WL 2408560 (D. Mass. Aug. 3, 2009) ............................................................ 16

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ 7670, 2010 WL 532960

(S.D.N.Y. Feb. 9, 2010) ................................................................................ 8, 15, 16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................ 15

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ 520, 2012 WL 651640

(S.D.N.Y. Feb. 24, 2012) ....................................................................................... 16

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16,

2011) ....................................................................................................... 3, 8, 15, 20

*Sand v. Greenberg*, No. 08 Civ 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010).............. 3, 14, 15

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999)...................................... 5, 16, 17

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ 1320124, 2012 WL 1320124 (S.D.N.Y. Apr.

16, 2012) ................................................................................................... passim

*Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780 (9th Cir. 2007) ...................... 16

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)

........................................................................................................................ 4

*Taft v. Ackermans*, No. 02 Civ 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).............. 11, 13

*Torres v. Gristede's Operating Corp.*, Nos. 04 Civ 3316, 08 Civ 8531, 08 Civ 9627, 2010

WL 5507892 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) ...................... 20

*Toure v. Amerigroup Corp.*, No. 10 Civ 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)

........................................................................................................................ 13

*Varljen v. H.J. Meyers & Co.*, No. 97 Civ 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8,

2000) ................................................................................................................. 5

*Velez v. Majik Cleaning Serv., Inc.*, 03 Civ 8698, 2007 WL 7232783 (S.D.N.Y. June 25,

2007) .................................................................................................... 4, 5, 12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................... 16, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................. 3, 5, 17

*Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ... passim

*Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) ......................................... 11

## STATUTES

29 U.S.C. § 216(b) ........................................................................................... 9

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ................................ 9

## I.  __INTRODUCTION.__

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, Kennedy Hodges, LLP, respectfully moves this Court for an award of attorneys' fees in the amount of $356,666.67, or one-third of the Settlement Fund (the "Fund"), and reimbursement of $9,649.79 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting this action, an additional $5,600 to pay for the cost of a third party company to administer the settlement, and an incentive award to lead Plaintiff, Geramie Hamsher, in the amount of $2,500.

Over the past two and one-half years, Class Counsel has spent approximately 349 attorney, paralegal, and support staff hours prosecuting this case. *See* Ex. 1, ¶ 14, Decl. of Galvin B. Kennedy in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses and Mot. for Class Representative Service Awards ("Kennedy Decl."). Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $150,476.97. *See* Ex. 1, Kennedy Decl. ¶ 14.  Plaintiffs' request for attorneys' fees based on a one-third of the settlement fund represents a multiplier of 2.37x of the lodestar.  This multiplier is well within the range of what this and other courts in this district have approved in similar wage and hour class and collective actions as provided in greater detail below.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result. Kennedy Decl. ¶¶ 19-20. For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense

---

[1] For a detailed account of the factual and procedural background of this case, Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declaration of Galvin Kennedy.

reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## II.    CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT FUND.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class. The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel will seek by motion and [] Defendants will not oppose … a total payment of $371,916.46 to compensate Class Counsel for all attorneys' fees, costs, and expenses (including all expenses incurred by the TPA in administering the Settlement)." *See* Ex. A (Settlement Agreement, ¶ 12) to Plaintiff's Motion for Final Certification and Approval of Settlement filed simultaneously with this motion. In addition, the Court-approved Notice that was sent to all Class Members stated the following:

> Under the settlement, these lawyers will ask the Court for attorneys' fees of $356,666.67 plus out-of-pocket expenses of $9,649.79 and settlement administration costs totaling $5,600.00.

Doc. 48-1 at ¶ 8 (Class and Collective Action Settlement Notice). No Class Member has objected to the requested attorneys' fees or expense reimbursement. Ex. C  (Decl. of Jarod Salinas ("Salinas Decl.)) ¶ 12) to Plaintiff's Memorandum in Support of Motion for Final Certification and Approval of Settlement filed simultaneously with this motion. The lack of objections is some indication of the reasonableness of the requested award and weighs in favor approving it. *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 1320124, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011). The request for one-third of the Fund plus expenses is reasonable and well within the range approved by courts in similar cases.

### A.  The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *Sewell*, 2012 WL 1320124, at *13; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011).  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10.

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y.

Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *Willix*, 2011 WL 754862, at *7; *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Second, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. It "provides a powerful incentive for the efficient prosecution and early resolution of

litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *5; *Velez*, 2007 WL 7232783, at *7. The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* (quoting *Savoie*, 166 F.3d at 461 n.4). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

**B.  The *Goldberger* Factors Support an Award of One-Third of the Fund.**

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of litigation;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

209 F.3d at 50 (internal quotation marks omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

**1.  Class Counsel's Time and Labor.**

Class Counsel spent significant effort to achieve the $1,070,000 settlement. Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses. *See* Ex. 1, Kennedy Decl. ¶¶ 11-14, 23. Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification. *Id.* Class Counsel conducted in-depth interviews with the named Plaintiff to determine the hours that he worked, the wages he was paid, the nature of his duties and responsibilities, and other information relevant to their claims. *Id.*  Class Counsel also obtained and reviewed numerous documents from Plaintiffs related to their employment with Defendants, including pay records and other related documents. *Id.*

Just as important is Class Counsel's history with these Defendants in particular. In prior litigation regarding the same subject, Class Counsel and Defense counsel herein took approximately 28 depositions of witnesses whose testimony bore on the exact claims raised in this lawsuit. Through such prior discovery of payroll, human resource managers and more than 20

6

other witnesses, the parties had a deep understanding of the issues in this case since its inception.

On June 5, 2017, Plaintiff Geramie Hamsher ("Plaintiff") filed this wage and hour action against Defendants The Scotts Company, LLC and EG Systems, Inc. ("Defendants") on behalf of himself and other current and former territory service representatives. *See* Doc. 1. The lawsuit alleged causes of action for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA") and for violations of the New York Labor Law. *See id.*

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims and defenses, and after extensive arm's-length negotiations and information exchange between the parties. *See* Ex. 1, Kennedy Decl. ¶¶ 11-14, 23, Plaintiffs retained a CPA and certified financial forensic expert to analyze the thousands of cells of data in spreadsheets and perform damages calculations. *Id.* ¶ 11. The parties attended Settlement Conference before the Honorable Debra Freeman on January 18, 2018, during which time they engaged in a vigorous exchange regarding their respective claims and defenses. *Id.* ¶ 11. Following the Settlement Conference, Plaintiff moved to amend his complaint. *Id.* During the next several months, the parties continued to negotiate, and ultimately reached an agreement, which was memorialized in a formal settlement agreement including all terms. *See* Ex. A (Settlement Agreement, ¶ 12), to Plaintiff's Memorandum in Support of Motion for Final Certification and Approval of Settlement filed simultaneously with this motion. At all times during the settlement process, the parties negotiated on an arm's-length basis. *See* Ex. 1, Kennedy Decl. ¶ 11 and 14.

In performing these tasks, Class Counsel expended approximately 149 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $150,476.97. *See* Ex. 1, Kennedy Decl. ¶ 15. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. *See*

Ex. 1, Kennedy Decl. ¶ 15, and Ex. 1-B, Kennedy Hodges, LLP, Time Records. Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it. *See* Ex. 1, Kennedy Decl. ¶ 15.

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *See* Ex. 1, Kennedy Decl. ¶ 20. *See Reyes*, 2011 WL 4599822, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. *See* Ex. 1, Kennedy Decl. ¶ 20. For example, since the Notice was sent out, Class Counsel and staff have responded to numerous class members' questions about the terms of the settlement and the amount of their settlement award. *Id.* As is common in wage and hour class actions, Class Counsel expects to respond to more Class Member inquiries after final approval, especially after checks are issued. *Id.*

## 2. Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912

F. Supp. 97, 100 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law[.] These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas- Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts are being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

This case hinged on several mixed questions of fact and law. In particular, the parties disputed the facts surrounding the method by which Defendant paid Class Members at various times and whether such payments resulted in a violation of the law. These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request. *See Sewell*, 2012 WL 1320124, at *12; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing 40% of the common fund).

### 3. Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by*

*Goldberger*, 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *See* Ex. 1, Kennedy Decl. ¶¶ 20-21. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id*. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Id*. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id*. Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id*.

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs' claim hinged on their ability to prove that Defendants did not follow the requirements to pay under the fluctuating workweek method and therefore did not pay Plaintiffs the total amount of overtime due under the FLSA and relevant state laws. Furthermore, when taking on this case, Plaintiffs' counsel faced the risk that the Court would not grant conditional certification under Section 216(b) of the FLSA or class certification under Rule 23, and such a determination would likely be reached only after extensive briefing. Defendant would likely have argued, both in its opposition to conditional and class certification and on a decertification motion, that individual questions preclude certification, including whether territory service representatives had uniform job duties across Defendant's branches and throughout the class period. Although Plaintiffs disagree with these agreements, defendants have prevailed on arguments like these. *See, e.g., Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification,

citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).

### 4. Quality of Representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (*citing In re Global Crossing*, 225 F.R.D. at 467).

Here, the Settlement provides much more than "a fraction of the potential recovery." By Plaintiffs' Counsel's estimation, the class's total damages for overtime are approximately $970,000 and the total damages for violations of the Wage Theft Prevention Act are approximately $1 million. Defendants, however, has estimated such damages to be substantially lower using an alternative reading of the law. Thus a settlement of $1,070,000 represents more than half of the total damages claimed using Plaintiff's calculations, and an substantially greater portion of the total damages based on Defendants' calculations. The settlement represents a fair and appropriate recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of losing class certification, or having the class decertified, losing on the merits, and losing on appeal.

Here, Class Members will each receive an average net settlement payment of approximately $3,500, net of attorneys' fees, costs, service awards and administrator costs.

Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. *See* Ex. 1, Kennedy Decl. ¶ 6, and Ex. 1-A, Kennedy curriculum vitae (listing cases). Class Counsel's skill and experience litigating wage and hour cases were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *Id;*. *Velez*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### 5.  Fee in Relation to the Settlement.

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million]

settlement").

The size of the $1,070,000 settlement weighs in favor of granting the requested fee award of one-third of the common fund. *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding one- third of a $42 million settlement in a FLSA and NYLL misclassification case). Courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g., Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one-third of $4.45 million fund in misclassification case); *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

While courts sometimes apply a "sliding-scale" approach by lowering the percentage awarded in "megafund" cases, in order to prevent a windfall to plaintiffs' attorneys, the $1,070,000 fund in this case does not trigger such an issue. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *3-4 (E.D.N.Y. Jun. 24, 2010) (noting that some courts apply "sliding-scale" approach in megafund cases, but declining to apply it in case involving $225 million settlement); *In re Veeco Instruments Inc. Sec. Litig*., No. 05 MDL 1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[A] fee of 30% of the $5.5. million settlement fund is consistent with fees awarded in . . . similar class action settlements of comparable value . . . [and] does not create a windfall."); *Taft*, 2007 WL 414493, at *10 ("Thirty percent of a larger settlement

fund could constitute a windfall; however, a settlement fund of [$15.175 million] does not create

such an issue."); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24,

2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as

would a $100 million settlement, and a 30% fee does not produce such a windfall."). A fee of one-

third of the fund is reasonable and "consistent with the norms of class litigation in this circuit."

*Willix*, 2011 WL 754862, at *7 (internal quotation marks omitted).

### 6.  Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In

rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken

into account the social and economic value of class actions, and the need to encourage experienced

and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at

399.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers.

*See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective –

ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation

marks omitted). Adequate compensation for attorneys who protect those rights by taking on such

litigation furthers the remedial purpose of those statutes. *Khait*, 2010 WL 2025106, at *8

("Attorneys who fill the private attorney general role must be adequately compensated for their

efforts. If not, wage and hour abuses would go without remedy because attorneys would be

unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of

legal fees, many violations of the Fair Labor Standards Act would continue unabated and

uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of

encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Reyes*, 2011 WL 4599822, at *7; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas*, 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

### III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 WL 2757792, at *8. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case...." *Id.*

Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also*

*Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of 6 times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of 7 times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

16

Indeed, when warranted by the facts and law, this Court has approved multiplier in wage and hour class and collective actions that range from 2x to 4x. *See, e.g.*, *Baten v. Mr. Kabob Restaurant Inc. et al.*, 16 Civ. 9559 (Oct. 2019, S.D.N.Y.) (Broderick, J.) (granting plaintiff's motion for attorneys' fees and awarding class counsel $166,666.66, which is one-third of the settlement fund and results in a multiplier of 2.3x); *Escobar et al v. Pret A Manger (USA) Limited et al.*, 17 Civ. 5227 (Feb. 2019, S.D.N.Y) (Broderick, J.) (approving attorney fees of $261,666 which is one-third of the settlement fund resulting from a multiplier of 4x). The court has also on numerous occasions approved a percentage fee of 1/3 of the total settlement fund when the record supported such an award. *Id*; *Gabal v. Scoutsee Inc. et al.*, 18 Civ. 2236 (Dec. 2018, S.D.N.Y.) (Broderick, J.) (Awarding counsel one-third of the settlement, albeit in a smaller settlement without class or collective claims.); *see also Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at **2, 7 (S.D.N.Y. Nov. 29, 2010) (Broderick, J.) (awarding class counsel one third of the settlement fund).

Class Counsel's request for one-third of the Fund ($356,666.66) is approximately 2.37 time the "lodestar." This multiplier falls on the low end of the range of multipliers in the body of law cited above.   The Court should readily approve fees with such a multiplier.   Approving such a multiplier will further encourage other competent wage and hour counsel to pursue claims supporting the rights of employees, and simultaneously avoid discouraging them from doing so. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie*, 166 F.3d at 461 ("[T]he percentage-of-

the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

Moreover, "where 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)).

Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

Class Counsel and their staff spent approximately 349 hours litigating and settling this matter. *See* Ex. 1, Kennedy Decl. ¶ 15. The time spent by Class Counsel is described in Class Counsel's Declarations and Class Counsel's contemporaneous time records attached thereto. *See id.* and Ex. 1-B (Kennedy Hodges, LLP Time Records). The hours worked by Class Counsel result

in a lodestar of approximately $150,476.97. *Id.* Class Counsel's request for approximately 2.37 times their lodestar is within the range of multipliers regularly awarded by this and other courts.

## V.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES AND ADMINISTRATION COSTS UNDER THE SETTLEMENT AGREEMENT.

Class Counsel request reimbursement of $15,249.79 in out-of-pocket expenses actually paid or incurred to be paid from the Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, Class Counsel's actual expenses of $15,249.79 were incidental and necessary to the representation of the Class. *See* Ex. 1, Kennedy Decl. ¶ 19 and 23. This represents $9,649.79 in out-of-pocket expenses and $5,600 that will be paid directly to the settlement administrator through a third-party settlement administration company called Simpluris.  *See id.* These expenses include court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research and expert fees. *Id.*, Ex. 1-C to Kennedy Decl. (Kennedy Hodges, LLP itemized expenses). These expenses, however, exclude the additional costs for travel, hotel and related meals and taxi rides for class counsel to fly from Texas to New York to appear at the hearing for final settlement approval.  *See* Ex. 1, Kennedy Decl. ¶ 19. Class counsel estimates these additional costs (not charged to the Class) will be $1,050.   *See id.* Class counsel will incur these additional expenses themselves, and do not seek reimbursement from the Class.

## VI.   NAMED PLAINTIFF GERAMIE HAMSHER SHOULD RECEIVE A MODEST SERVICE AWARD FOR STEPPING FORWARD AND SERVING AS THE CLASS REPRESENTATIVE.

Geramie Hamsher has made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.  Mr. Hamsher assisted Class Counsel's investigation

and prosecution of the claims by providing detailed factual information regarding his job duties and those of other Class Members, the wages they were paid, the hours that they worked, and other information relevant to their claims, and by assisting with the preparation and review of the complaint and discovery. He also provided documents relevant to the case and took time off from his job to attend the settlement conference with Judge Debra Freeman, albeit by phone. He made himself available and in fact regularly communicated with Class Counsel throughout this litigation. Therefore, he should receive a service award of $2,500, which is commensurate with service awards approved in this district. This requested service award represents 0.002 of the total settlement amount.

Courts routinely approve service awards equal to or greater than the award requested here. *See Sewell*, 2012 WL 1320124, at *14-15 (approving service awards of $15,000 and $10,000 in wage and hour class action); *Reyes*, 2011 WL 4599822, at *9 (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative); *Willix*, 2011 WL 754862, at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (approving service awards of $15,000 each in wage and hour class action); *Khait*, 2010 WL 2025106, at *9 (approving service awards of $15,000 and $10,000 in wage and hour class action).

Even though he originated the lawsuit, he will only receive a small portion of the Fund $6,759.04 before taxes are withheld, further supporting a service award of $2,500.

## VII.    CONCLUSION.

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Attorneys' Fees and Reimbursement of Expenses, Payment of Administration Costs,

and Incentive Awrd, and enter an Order: (i) finding Plaintiffs' counsels' hourly rates to be fair and reasonable, (ii) awarding attorneys' fees in the amount of $356,666.67, which represents one-third of the Fund; (iii) approving payment of $15,249.79 in expenses that Class Counsel incurred in this action and to pay for the costs to administer the settlement; and (iii) approving the service award to lead plaintiff Geramie Hamsher in the amount of $2,500.

Dated: January 15, 2020

      Houston, Texas

                                         Respectfully submitted,

                                         KENNEDY HODGES, L.L.P.

                              By: /s/ Galvin B. Kennedy
                                  Galvin B. Kennedy (admitted *pro hac vice)*
                                  gkennedy@kennedyhodges.com
                                  Texas State Bar No. 00796870
                                  4409 Montrose Blvd., Ste. 200
                                  Houston, Texas 77006
                                  Telephone: (713) 523-0001
                                  Facsimile: (713) 523-1116

                                *Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I certify that this document was filed through the Southern District of New York's CM/ECF system which will cause to be served an electronic copy on all counsel of record on January 15, 2020.

                                  /s/ Galvin Kennedy
                                  Galvin Kennedy